696 P.2d 856

**STATE of Idaho, Plaintiff-Appellant,**

v.

**Charles and Hong NEWMAN, Defendants-Respondents.**

**No. 14995.**

Supreme Court of Idaho.

Jan. 31, 1985.

Jim Jones, Atty. Gen., and Lynn E. Thomas, Sol. Gen. (argued), Boise, for plaintiff-appellant.

Eugene A. Marano, Coeur d'Alene, for defendants-respondents.

BISTLINE, Justice.

## HISTORY

On April 23, 1982, Charles and Hong Newman were charged with delivery of drug paraphernalia and possession of drug paraphernalia with intent to deliver, in violation of I.C. § 37-2734B, a section of Idaho's Drug Paraphernalia Act.[1] On Decem-

1. Idaho's Drug Paraphernalia Act is found at I.C. §§ 37-2701(bb), -2734A, -2734B, and -2774(a)(7). Section 37-2701(bb) defines drug paraphernalia as any items "used, intended for use or designed for use" in a wide number of activities relating to the production, storage,

ber 23, 1982, both defendants filed motions to dismiss the charges pending against them, arguing that Idaho's Drug Paraphernalia Act is unconstitutional. The state and the defendants stipulated to, and the district court conducted, a facial consideration of the Act's constitutionality; thus, the issue considered at trial was that of the facial constitutionality of the Act and not the constitutionality of the Act in light of the conduct in which the Newmans were charged.

The district court agreed with the defendants, holding the Act to be unconstitutionally vague and overbroad on its face, in violation of the due process clause of the Fourteenth Amendment of the United States Constitution. In particular, the district court found two constitutional flaws in the Act: (1) The Act's definition of "drug paraphernalia" contains undefined terms used in drug traffic that are not words of common usage and understanding. Consequently, the Act does not give fair notice to the public of prohibitive conduct; and (2) the Act's intent provisions allow an individual to be prosecuted based upon the intent of another person.[2]

Applying the rules governing facial challenges to the constitutionality of a statute on vagueness and overbreadth grounds, we find the Act in question to be constitutional on its face for the reasons set forth below, and thus reverse the district court. We will begin by reviewing the history and purpose of Idaho's Drug Paraphernalia Act.

## I.

On April 9, 1980, Idaho enacted its Drug Paraphernalia Act, to become effective on July 1, 1980. The Act tracks closely the Model Drug Paraphernalia Act (the Model Act), which was written by the Drug Enforcement Administration (DEA) of the United States Department of Justice. The Model Act was written by DEA in an attempt to overcome constitutional infirmities of earlier drug paraphernalia legislation.[3] The major constitutional problem with the earlier statutes was that they failed to require specifically that the accused's intent or knowledge be a precondition to criminal liability.

Impetus behind the creation of the Model Drug Paraphernalia Act is attributed to the belief of the drafters of the Act that the sale and advertisement of drug paraphernalia has grown exponentially, and that this growth encourages the use and sale of illegal drugs. The drafters of the Model Act argue, in fact, that:

> The availability of Drug Paraphernalia has reached epidemic levels. An entire industry has developed which promotes, even glamorizes, the illegal use of drugs, by adults and children alike. Sales of

and consumption of drugs. Included in the definition is a non-exclusive list of items that are drug paraphernalia, as well as a list of factors to consider in determining whether the defendant intended the item to be, in fact, drug paraphernalia.

Section 37–2734A makes criminal the use of drug paraphernalia in the production, storage, and consumption of drugs. It also makes criminal the placing of an advertisement in any publication with the purpose of promoting the sale of objects for use as drug paraphernalia. A separate subsection creates special penalties for the delivery of drug paraphernalia to minors.

Section 37–2734B makes criminal the delivery, possession with intent to deliver, or manufacture with intent to deliver of drug paraphernalia by one knowing or under circumstances where one reasonably should know that an item will be used to produce, store, or consume drugs.

Section 37–2744(a)(7) provides for the forfeiture of drug paraphernalia.

2. The Newmans also argued that Idaho's Act violates the Equal Protection Clause of the Fourteenth Amendment. That claim was not decided upon by the district court and not addressed by either party on appeal. We therefore decline to decide this issue, although we note that this issue has been decided by the Ninth Circuit in *Stoianoff v. State of Montana,* 695 F.2d 1214, 1222–23 (9th Cir.1983), wherein the claim was rejected by the court.

3. *See, e.g.,* ordinances held unconstitutional in *Music Stop, Inc. v. City of Ferndale,* 488 F.Supp. 390 (E.D.Mich.1980); *Knoedler v. Roxbury T.W.P.,* 485 F.Supp. 990 (D.N.J.1980); *Bambu Sales, Inc. v. Gibson,* 474 F.Supp. 1297 (D.N.J. 1979).

Drug Paraphernalia are reported as high as three billion dollars a year.

Prefatory note, Model Act.

As a result at least 25 states, including Idaho, have enacted legislation that incorporates some or all of the Model Act's provisions.[4]

These "new generation" paraphernalia laws have not been without their constitutional challenges; however, rather than following in the footsteps of their predecessors, these newer laws have almost always been upheld by both state and federal courts alike.[5] This is especially true since the United States Supreme Court

came down with its decision in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). In that case the Court unanimously held an ordinance regulating the sale of drug paraphernalia—an ordinance far less detailed than Idaho's Act— to be not so facially overbroad or vague as to violate the constitution. While the Court in *Flipside* was confined to a review of a licensing ordinance, and in this case we are reviewing a criminal statute, we find the principles set forth in *Flipside* concerning the method of analysis for facial challenges to the constitutionality of a statute to be nonetheless applicable here.[6] We

4. Arkansas (Ark.Stat.Ann. § 82–2601(y) (Supp. 1981)); Colorado (Colo.Rev.Stat. §§ 12–22–501 to –506 (Supp.1981)); Connecticut (Conn.Gen. Stat. §§ 19–443(20)(a), –472a, –474a (Supp. 1982)); Delaware (Del.Code Ann. tit. 16, §§ 4701(13) and 4771–75 (Supp.1980)); Florida (Fla.Stat. 893.12, 893.145, –.146 (Supp.1982)); Georgia (Ga.Code Ann. §§ 16–13–32.1, –32.2 (1982)); Kansas (Kan.Stat.Ann. §§ 65–4150 to –4157 (Supp.1981)); Louisiana (La.Rev.Stat. Ann. §§ 40:1031 to 1036 (West Supp.1982)); Maine (Me.Rev.Stat.Ann. tit. 17–A, § 1111–A (Supp.1982)); Maryland (Md.Ann.Code, art. 27, §§ 287A and 297 (1982)); Massachusetts (Mass. Ann.Laws ch. 94C, §§ 1, 321, 47(a)(6) (Michie/Law Co-op Supp.1982)); Montana (M.C.A. §§ 45–10–101 et seq.)); Nebraska (Neb. Rev.Stat. §§ 28–439 to –444 (Supp.1980)); Nevada (Nevada Revised Statutes §§ 453.554–566); New Hampshire (N.H.Rev.Ann. §§ 318–B:1(x-a), :2, :26 (Supp.1981)); New Jersey (N.J.Stat. Ann. §§ 24:21–46 to –53 (West Supp.1982)); New Mexico (N.M.Stat.Ann. §§ 30–31–2(W), –25.1, –34 (Supp.1982)); North Dakota (N.Dak. Cent.Code, §§ 12.1–31.1 –01 to –06 (Supp.1981); Oklahoma (Okla.Stat.Ann. tit. 63, §§ 2–101(32), –101.–1, –405, –503 (West Supp.1981)); Pennsylvania (Pa.Stat.Ann. tit. 35, §§ 780–102(b), –113(a)(32–34), –113(i), –128(a)(1) (Purdon Supp.1982)); Texas (Tex.Stat.Ann. art. 4476–15 §§ 1.02(29), 4.07, 5.03(a)(7), 5.15 (Vernon Supp. 1982)); Utah (Utah Code Ann. §§ 58–37a–1 to –6 (Supp.1981)); Virginia (Va.Code §§ 18.2–265.1 to –265.4 (1982)); and Washington (Wash.Rev. Code Ann. §§ 69.50.102, –.412, –.505 (Supp. 1982)).

5. *See, e.g., Stoianoff, supra; Tobacco Accessories & Novelty Craftsmen Merchants Association of Louisiana v. Treen,* 681 F.2d 378 (5th Cir.1982); *Casbah v. Thone,* 651 F.2d 551 (8th Cir.1981), *cert. denied* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *Town Tobacconist v. Kimmelman,* 94 N.J. 85, 462 A.2d 573 (1983); *State of Utah v. Murphy,* 674 P.2d 1220 (Utah 1983).

6. Federal precedent is controlling in this case because the Newmans argue that, on its face, Idaho's Drug Paraphernalia Act violates the due process clause of the Fourteenth Amendment to the United States Constitution. The Newmans did not also argue that the due process clause of art. 1, § 13 of Idaho's Constitution invalidates the Act in question. Had they done so, we do not think that the result would have been different, for we are convinced that the rules we set down for facial challenges to the constitutionality of a statute, although derived from federal sources, are also sound and proper under Idaho's Constitution.

We do not suggest, however, that if federal courts were to change these rules we would likewise change ours, unless, of course, our rules were now held to violate the federal constitution. The reason is that federal and state constitutions derive their power from independent sources. It is thus readily apparent that state courts are at liberty to find within the provisions of their own constitutions greater protection than is afforded under the federal constitution as interpreted by the United States Supreme Court. *See Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975). This is true even when the constitutional provisions implicated contain similar phraseology. Long gone are the days when state courts will blindly apply United States Supreme Court interpretation and methodology when in the process of interpreting their own constitutions.

We are convinced, too, that the Supreme Court's decision in *Flipside* is on point in this case and is controlling as to certain issues. We note that the ordinance in question in *Flipside* was a licensing ordinance and may be viewed as an economic regulation. This is certainly different from Idaho's Act, which is a criminal statute. *Flipside's* analysis is applicable, however, because the Supreme Court stated that: "Flipside's facial challenge fails because, under

proceed, then, to analyze the Newmans' facial challenge by first examining their overbreadth claim and then examining their vagueness claim.[7]

## II.

To be unconstitutionally overbroad, Idaho's Act must intrude upon a substantial amount of constitutionally protected conduct. *Flipside, supra,* 455 U.S. at 494, 102 S.Ct. at 1191. In making the evaluation, it is incumbent upon us to evaluate the ambiguous as well as the unambiguous portions of the Act. *Id.,* n. 6.

Although somewhat unclear, apparently the Newmans argue that the broad list of factors in I.C. § 37–2701(bb) allows a trier of fact, in determining whether an item is, in fact, intended to be drug paraphernalia, to consider such things as alternative and unpopular lifestyles, thereby intruding upon rights of speech and association. We are not so persuaded.[8]

We first note that there is a strong policy against applying the overbreadth doctrine in a facial constitutional challenge. *Broadrick v. Oklahoma,* 413 U.S. 601, 613–15, 93 S.Ct. 2908, 2916–18, 37 L.Ed.2d 830 (1973). One exception to this policy is in the First Amendment area. *Stoianoff, supra,* 695 F.2d at 1218. The only First Amendment right arguably implicated in this case is that of commercial speech.[9] However, the overbreadth doctrine does not apply to commercial speech. *Flipside, supra,* 455 U.S. at 497, 102 S.Ct. at 1192; *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 565 n. 8, 100 S.Ct. 2343, 2351 n. 8, 65 L.Ed.2d 341 (1980). Therefore, even if the Act were overbroad, it would be constitutional, the overbreadth doctrine not applying. *Kansas Retail Trade, supra,* 695 F.2d at 1347–48.

Furthermore, commercial speech in this context is not constitutionally protected, for Idaho's Act is expressly directed at commercial activity promoting or encouraging illegal drug use. "If that activity is deemed 'speech,' then it is speech proposing an illegal transaction, which a government may regulate or ban entirely." *Flipside, supra,* 455 U.S. at 497, 102 S.Ct. at 1192 (citations omitted).[10] Thus, we hold that Idaho's act is not facially overbroad, for it does not intrude upon a substantial

---

the test appropriate to either a quasi-criminal *or a criminal law,* the ordinance is sufficiently clear as applied to Flipside." *Flipside, supra,* 455 U.S. at 500, 102 S.Ct. at 1194 (emphasis added). Thus, in light of the strictness of the Supreme Court's test in *Flipside*—strict enough to cover criminal laws—we feel it proper to apply its rules and interpretation to the case at hand.

We note that many federal and state courts have also subsequently applied the rules set down by the Court in *Flipside* to facial challenges of *criminal* drug paraphernalia acts. *See, e.g., Stoianoff, supra; Kansas Retail Trade Cooperative v. Stephan,* 695 F.2d 1343 (10th Cir. 1982); *Town Tobacconist, supra; Murphy, supra.*

7. A "facial" challenge means that the law is "invalid *in toto* and therefore incapable of any valid application." *Steffel v. Thompson,* 415 U.S. 452, 474, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505 (1974).

8. While disagreeing with the Newmans that Idaho's Act facially intrudes upon a substantial amount of constitutionally protected rights, we feel it proper to note the potential danger of

discriminatory enforcement of the Act against those who may have politically unpopular beliefs or socially unusual lifestyles. We have no evidence that this will be the case, and the fact that the Act *may* be enforced discriminatorily "is of no due process significance unless the possibility ripens into a prosecution." *Flipside, supra,* 455 U.S. at 503 n. 21, 102 S.Ct. at 1196 n. 21. To insure that this never occurs, however, it should be noted that our decision today does not prevent anyone from attacking the constitutionality of Idaho's Act *as applied* to a defendant in light of the conduct with which he or she is charged.

9. Since we hold that Idaho's Act focuses upon the intent of the accused, *see* section III, *infra,* we do not believe that the Act, on its face, intrudes upon any rights of association.

10. We also note that the Newmans have only a minimal due process right to sell the items they sell. That right is not violated here, for the regulation and prohibition of items that have some lawful as well as unlawful uses is not an unreasonable means of discouraging drug use. *Flipside, supra,* 455 U.S. at 498 n. 9, 102 S.Ct. at 1193 n. 9.

amount of constitutionally protected conduct.

### III.

Even though a law satisfies the overbreadth test, it may nevertheless be challenged on vagueness grounds. The test for finding a statute void-for-vagueness on its face, and thereby in violation of due process, is whether the law is impermissibly vague in *all* of its applications. *Flipside, supra*, 455 U.S. at 498, 102 S.Ct. at 1193. That is, whether the Act is invalid *in toto*. *Steffel, supra*, 415 U.S. at 474, 94 S.Ct. at 1223.[11]

We first note the underpinnings of the vagueness doctrine. In essence, three values are protected: (1) that of protecting innocent people from being prosecuted by giving them reasonable opportunity to know what is and what is not prohibited conduct; (2) that of avoiding the arbitrary and discriminatory enforcement of the law by providing explicit standards for those charged with enforcing the law; and (3) that of avoiding the delegation of basic policy matters to law enforcement personnel, judges, and juries for resolution on an *ad hoc* basis, with the all-too-real possibility of arbitrary and discriminatory application, by clearly defining the standards under which an individual's innocence or guilt can be determined. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972).

Furthermore, as the Supreme Court teaches in *Flipside*, these standards should not "be mechanically applied." *Flipside, supra*, 455 U.S. at 499, 102 S.Ct. at 1193. Rather, they should be applied in light of the nature of the ordinance— whether it be a civil or criminal ordinance, whether it impinges upon the exercise of constitutionally protected rights, or whether it involves mere economic regulation. In our case, although Idaho's Act is a criminal statute, like the ordinance in *Flipside*, it regulates economic activity. We are, therefore, cognizant of the fact that "businesses which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Id.* (footnotes omitted). With these principles in mind we turn to Idaho's Act to determine whether it impermissibly impinges upon any of these values.

### A. *Definition of Drug Paraphernalia*

The Newmans argue that the definition of drug paraphernalia in I.C. § 37–2701(bb) allows for an individual's conviction to be based upon the "transferred intent" of another person. Furthermore, the Newmans argue that the Act's definitions are so unclear that they invite arbitrary and discriminatory enforcement, as well as leave citizens unclear as to what is and what is not drug paraphernalia. In pertinent part, § 37–2701(bb) defines drug paraphernalia as any item "used, intended for use, or designed for use" in producing, storing, or consuming drugs.

#### 1. *Transferred intent.*

The ordinance in *Flipside* defined drug paraphernalia as items "designed for use or marketed for use" with drugs. The Supreme Court specifically held this terminology not to be facially vague. With respect to the phrase "designed for use," the Court held that this part of the definition refers to items that are principally used with illegal drugs by virtue of their objective features—features which were designed by the manufacturer. Thus, the Court held that there was no danger of a finding of guilt by transferred intent, for the definition refers to the manufacturer's design and intent and not the intent of another person in selling or using the item. *Flipside, supra*, 455 U.S. at 501, 102 S.Ct. at 1194.

---

11. We do not wish to be understood as suggesting that this test is also the appropriate test to be used in cases where a statute, as applied to a particular individual in light of the conduct with which he or she is being charged, is being challenged as being vague. On the contrary, standards governing constitutional challenges to acts as applied to an individual are not as difficult to meet as those governing facial challenges. *See* 69 A.L.R.Fed. at 29 § 3(b).

With respect to the "marketed for use" standard, the Court held that it refers to "a retailer's intentional display and marketing of merchandise." *Id.* at 502, 102 S.Ct. at 1195. Thus, the ordinance, so construed by the Court, gives adequate notice of what is prohibited.

We hold that the Supreme Court's interpretation of "designed for use" is controlling in this case. Therefore, the "designed for use" portion of the statute is not unconstitutionally vague for the reasons cited by that Court. The Court's interpretation of "marketed for use," however, is not controlling, for Idaho's Act uses the phrase "intended for use," instead of "marketed for use." We hold, however, that the phrase "intended for use" is also not unconstitutionally vague for the following reason.

While the terminology "intended for use" less clearly refers to the defendant-merchant than "marketed for use" does, we believe the following construction, which upholds this portion of the Act,[12] properly interprets this section: The term "intended for use" means that, in order for a prosecution to be made out, proof must be presented beyond a reasonable doubt that the *defendant* sold or marketed an item with the intent that it be used with drugs.[13]

Under this interpretation of "intended for use" there is no problem of transferred intent, for what makes an item drug paraphernalia is the intent of the defendant and not that of another person— whether purchaser or manufacturer. This interpretation also minimizes the risk of arbitrary or discriminatory enforcement or of inadequate notice of the Act's coverage and prohibitions. To be crystal clear, then, we hold that the intent terminology in I.C. § 37–2701(bb) refers to that of the person who has *control* of the illegal drug paraphernalia and is being charged with a violation of the Act. *See Stoianoff, supra,* 695 F.2d at 1220.[14]

### 2. *Unclearness in the Definition.*

We are not constitutionally concerned with the fact that Idaho's Act, in further defining what constitutes drug paraphernalia, uses drug jargon in listing examples of drug paraphernalia, even though such words are probably not understood by the general populace.[15] The reason is that we view these lists, as well as the other factors included in the statute to be used in determining whether an item is drug paraphernalia, as being solely helpful guides for juries in determining whether the defendant intended that an item be used with illegal drugs, thereby making it drug paraphernalia. That is, we do not think these lists and factors should be used in deter-

---

**12.** It is hornbook law that legislative enactments are presumed constitutional and that appellate courts are obligated to seek an interpretation of the statute which upholds its constitutionality. *In the Matter of 1979 Valuation of Parcel No. R2348750330,* 104 Idaho 681, 688, 662 P.2d 1125, 1132 (1983); *Leonardson v. Moon,* 92 Idaho 796, 806, 451 P.2d 542, 552 (1969).

**13.** We note that we are in agreement with at least two federal circuits with respect to their interpretation of "intended for use." *See Stoianoff, supra,* 695 F.2d at 1220; *Levas & Levas v. Village of Antioch, Illinois,* et al., 684 F.2d 446 (7th Cir.1982). We also agree with these two circuits in their interpretation of the rest of the definition of drug paraphernalia. Namely, for an item to be drug paraphernalia under Idaho's Act, the user is simply required to possess an item used to produce or consume drugs ("use"), while a manufacturer must design an item that

he or she intends to be used with drugs ("designed for use"). *See* III.A.2. *infra.*

**14.** We note that an overwhelming majority of jurisdictions agree that the Model Act makes the intent of the *defendant* rather than the intent of someone else, crucial. *See, e.g., Stoianoff, supra; Kansas Retail, supra; New England Accessories Trade Assoc. v. Tierney,* 691 F.2d 35, 36 (1st Cir.1982); *Tobacco Accessories & Novelty Craftsman Merchants Assoc. of Louisiana v. Treen, supra; Florida Businessmen for Free Enterprise v. City of Hollywood,* 673 F.2d 1213, 1219 (11th Cir.1982), *cert. denied,* 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983); *Casbah, supra; Town Tobacconist, supra; State v. Dunn,* 223 Kan. 411, 662 P.2d 1286 (1983).

**15.** I.C. § 37–2701(bb)'s list includes references to "bongs," "chillums," and "air driven pipes" as examples of drug paraphernalia.

mining whether an item is, in fact, "drug paraphernalia" without also considering the defendant's state of mind. Our view is in agreement with the New Jersey Supreme Court's view that the "listed factors fit quite comfortably into a category of matters relevant to defendant's intent," assisting a jury in determining the defendant's state of mind. *Town Tobacconist, supra,* 462 A.2d at 583.

This interpretation is most consistent with the Act's thrust and intent. Under our construction, then, a jury will never determine as a fact question whether an item is in and of itself "drug paraphernalia" without also considering the defendant's state of mind with respect to that item in using, marketing, or designing it. We think it clear that in nearly every case, the item in issue will be capable of being used with a controlled substance, thereby making it "drug paraphernalia." The crucial decision under the Act, though, and what makes an item "drug paraphernalia" for purposes of the Act, is whether the defendant intended that it be used with illegal drugs. We think it rare, indeed, that a defendant will ever be able to rebut the assertion that the item in question is, in fact, capable of being used as drug paraphernalia.[16] But the defendant need not do so. Rather, with respect to I.C. § 37–2701(bb), what the State must prove beyond a reasonable doubt is that the defendant used an item with an illegal drug (use), or, marketed an item with the intent that it be used with illegal drugs (intended for use), or, designed an item with the intent

that it be used with illegal drugs (designed for use). Any other construction of the statute would unconstitutionally lead juries, parties, and judges alike into a semantical quagmire, with the potential for reliance on factors and evidence outside the defendant's awareness and control all too real.

We also agree with the New Jersey Supreme Court that there is nothing in the Model Act's legislative history to suggest that a jury should first decide if an item is, in and of itself, drug paraphernalia before determining the defendant's state of mind. *Town Tobacconist, supra,* 462 A.2d 583–84. Rather, it is clear that the framers of the Model Act, and in turn the Idaho legislature, intended the definition of drug paraphernalia be determined by the defendant's state of mind, with evidence of the items associated with the defendant, and the lists and factors in I.C. § 37–2701(bb), going toward proving the defendant's state of mind. Under this construction of the statute, it is clear that the definition of drug paraphernalia is not invalid in all applications; therefore, it is not facially vague and unconstitutional. Furthermore, since the crux of the statute is the defendant's intent, citizens are put on adequate notice of what is prohibited conduct, thereby extinguishing any fear of a citizen being prosecuted for conduct he or she did not intend to do. Thus, in light of our construction of this section of Idaho's Act, we do not think that it is unconstitutionally vague on its face, although it is not a model of clarity.[17]

**16.** Even if he or she could, this would still go toward disproving the required state of mind of the defendant.

**17.** The district court also cited art. 3, § 17 of the Idaho Constitution in discussing the constitutionality of the Act's definition of drug paraphernalia. That section states: **"Technical terms to be avoided.**—Every act or joint resolution shall be plainly worded, avoiding as far as practicable, the use of technical terms." Apparently, the district court was concerned with the Idaho Act's references to "bongs," "chillums," and "air driven pipes" as examples of drug paraphernalia, believing these references to be "technical terms." The district court did not elabo-

rate further, however, whether these terms could have been practicably avoided, thereby violating § 17.

We have had little occasion to interpret art. 3, § 17. The two most recent cases to discuss this provision, *Nelson v. Marshall,* 94 Idaho 726, 497 P.2d 47 (1972), and *Ada County v. Wright,* 60 Idaho 394, 92 P.2d 134 (1939), have treated this section in terms of a vagueness analysis. We agree with this approach. The rules we have set down with respect to the void-for-vagueness doctrine incorporate fully, and amply handle, the mandate of art. 3, § 17. Therefore, no independent analysis of Idaho's Act need be made under art. 3, § 17, our discussion of vagueness

### B. *Reasonably Should Know Standard*

In addition to imposing criminal liability upon a defendant for delivery, possessing with intent to deliver, or manufacturing with intent to deliver drug paraphernalia, *knowing* that it will be used to produce, store, or consume a controlled substance, I.C. § 37–2734B of Idaho's Act, as well as the Model Act, also imposes liability upon the defendant who under the circumstances should *reasonably know* that the item will be used with illegal drugs. Thus, in effect, this section of the Act contains two different state-of-mind possibilities, either of which is apparently designed so as to be sufficient for prosecution purposes.[18]

 One federal circuit court has held this language to be impermissibly vague and excised it from the statute,[19] while another circuit has expressed disfavor with the wording.[20] In addition, several states have adopted the Model Act, but excluded the "reasonably should know" language.[21] The Ninth Circuit has, however, upheld the constitutionality of this language.[22] We believe the Ninth Circuit to be the better reasoned approach and hold that the "reasonably should know" language is not unconstitutionally vague.

In essence, I.C. § 37–2701(bb) and § 37–2734B require a double-layered state of mind: under § 37–2701(bb) the defendant must first have marketed or designed an item with the intent that it be used with illegal drugs before his or her knowledge, or imputed knowledge, of its use by a buyer or retailer comes into play under § 37–2734B. Thus, so-called constructive knowledge only becomes an issue where the State·proves beyond a reasonable doubt, first, that the defendant intended to market or design items to be used to produce, store, or consume illegal drugs and then delivered, possessed with intent to deliver, or manufactured with intent to deliver such items; and it is only after the defendant has passed this threshold, that he or she is then obligated to become aware of objective facts that would fairly indicate the use for which the item was acquired.[23] *Stoianoff, supra,* 695 F.2d 1221, *accord: Casbah, supra; New England Accessories, supra; Delaware Accessories Trade Assoc. v. Gebelein,* 497 F.Supp. 289 (D.Del.1980). We find no constitutional problems when the defendant passes this threshold, however, in requiring him or her to be aware of the objective realities of the sale.[24]

For the foregoing reasons we do not find Idaho's Act to be facially vague.

### IV.

The Newmans also argue that I.C. § 37–2734A(2) is unconstitutional in that it violates the First Amendment right to speech.[25] Section 37–2734A(2) makes it a

---

18. I.C. § 37–2734A(1) makes criminal the use or possession with intent to use of an item in producing, storing or consuming illegal drugs. No knowing or "reasonably should know" language is used.

adequately dealing with the issues this section raises.

19. *Levas & Levas v. Village of Antioch, supra.*

20. *New England Accessories Trade Association, Inc. v. City of Nashua, supra.*

21. *See, e.g.,* N.J.Stat.Ann. §§ 24:21–46 to –53 (West Supp.1982) and Utah Code Ann. §§ 58–37a–1 to –6 (Supp.1981). The New Jersey Supreme Court stated that the New Jersey legislature deleted the "reasonably should know" language specifically because of fears as to its constitutionality. *Town Tobacconist, supra,* 462 A.2d at 585.

22. *Stoianoff, supra.*

23. It is clear then that the legitimate merchant who sells innocuous items need make·no judgment about the purpose of the buyer based upon the surrounding circumstances, there being first no evidence of his or her intent that the items be used with illegal drugs.

24. As several of the federal circuit courts have noted, "reasonably should know" language has been upheld in a host of other federal criminal statutes. *Stoianoff, supra,* 695 F.2d at 1222; *Casbah, supra,* 651 F.2d at 561, n. 13.

25. The Newmans have not alleged that the Idaho Constitution's provision for freedom of speech—art. 1, § 9—is also violated. Because that section was not raised or argued by the Newmans, and because the wording in that section is different from that found in the First Amendment, we need not decide in this case if

crime to advertise the sale of drug paraphernalia when the person placing the ad knows, or reasonably should know, that the item for sale is drug paraphernalia. We find no constitutional infirmity in the above section.

We begin by noting that our holding and interpretation of the "reasonably should know" language under I.C. § 37–2734B is equally applicable to § 37–2734A(2).[26] There being no problems of vagueness, we turn to the issue of whether any First Amendment rights are infringed upon.

■ The First Amendment right allegedly infringed upon in this case is that of commercial speech. Although the First Amendment does protect commercial speech, *see, e.g., Virginia State Board of Pharmacy v. Virginia Consumer Council*, 425 U.S. 748, 761–62, 96 S.Ct. 1817, 1825–26, 48 L.Ed.2d 346 (1976), the protection afforded is not as great as that granted non-commercial speech. *Robert L. Rieke Bldg. Co., Inc. v. City of Overland Park*, 232 Kan. 634, 657 P.2d 1121, 1129 (1983); *Ford Dealers Ass'n v. Department of Motor Vehicles*, 32 Cal.3d 347, 650 P.2d 328, 339–40, 185 Cal.Rptr. 453, 464–65 (1982); *City of Lakewood v. Colfax Unlimited Ass'n, Inc.*, 634 P.2d 52 (Colo.1981); *State v. Bloss*, 64 Hawaii 148, 637 P.2d 1117, 1125 (1981), *cert. denied* 459 U.S. 824, 103 S.Ct. 56, 74 L.Ed.2d 60; *State v. O'Neill Investigations, Inc.*, 609 P.2d 520 (Alaska 198). In fact, the Supreme Court has held that the overbreadth doctrine does not apply to commercial speech. *Central Hudson, supra*, 447 U.S. at 565, n. 8, 100 S.Ct. at 2351, n. 8. Thus, § 37–2734A(2) is constitutional even if it is overly broad, for

as we noted above, the only speech affected by this Act is commercial speech.

■ Furthermore, it is the law under the federal constitution that government can ban commercial speech related to illegal activity. *Pittsburg Press Co. v. Human Relations Commission*, 413 U.S. 376, 388, 93 S.Ct. 2553, 2560, 37 L.Ed.2d 669 (1973). Since we have held Idaho's Act to be facially constitutional, we hold that the state can also ban advertisement promoting or encouraging that which the Act makes illegal. *Flipside, supra*, 455 U.S. at 497, 102 S.Ct. at 1192.

V.

■ Many states and communities have enacted drug paraphernalia legislation. Whether such legislation is, in fact, effective in stemming illegal drug use is open to legislative—not judicial—debate.[27] While not a model of clarity and conciseness, we hold that, as construed by this Court this day, Idaho's Drug Paraphernalia Act is neither unconstitutionally vague nor overbroad on its face. We also hold that it does not on its face unconstitutionally impair an individual's first amendment rights.

We therefore reverse the judgment of the district court and remand with instructions to reinstate the informations filed against the defendants.

DONALDSON, C.J., and BAKES and HUNTLEY, JJ., concur.

SHEPARD, J., concurs in the result.

---

26. *See* part III.B., *supra*.

27. In *Leliefeld v. Johnson*, 104 Idaho 357, 375, 659 P.2d 111, 129 (1983), we stated:

So long as the statute is constitutional, we have no intrinsic ability to review its inherent wisdom or, if it seems unwise, the power to change it. Whenever lines are drawn by legislation, some may seem unwise, but the responsibility for drawing these lines rests with the legislature and judicial review is limited.

---

that section independently invalidates the Idaho Act's advertising section. We also decline to decide if the rules we apply today under the First Amendment are equally applicable under art. 1, § 9. We leave for another case, with the appropriately raised issues, the task of determining if the First Amendment of the United States Constitution and art. 1, § 9 of the Idaho Constitution compel different analytical methodologies with outcomes necessarily different in some cases.