899 P.2d 427

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Dennis REIMER, Defendant–Appellant,**

No. 20991.

Supreme Court of Idaho,
Boise, February 1995 Term.

June 23, 1995.

Rehearing Denied Aug. 16, 1995.

Westberg, McCabe & Collins, Boise, for appellant. Thomas J. McCabe argued.

Alan G. Lance, Atty. Gen., and Douglas A. Werth, Deputy Atty. Gen., Boise, for respondent. Douglas A. Werth argued.

McDEVITT, Chief Justice.

This is a criminal case in which Dennis Reimer (Reimer) appeals from the denial of a motion to suppress evidence discovered in connection with the execution of a warrant for the seizure of a vehicle for civil forfeiture. Reimer entered a conditional plea of guilty to the single charged count of possession of methamphetamine with intent to distribute; the plea was conditioned on Reimer's reservation of his right to appeal the denial of the motion to suppress. Although Reimer has been sentenced to an eight-year sentence with two years fixed and six years indetermi-

nate, execution of the sentence was stayed pending appeal after Reimer posted bond.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS.

In the early morning hours of February 5, 1993, Detective Mike Harrington (Harrington) of the Boise City Police Department observed a white 1969 G.M.C. pickup truck in the parking lot of the Hi Ho Club in Garden City. Harrington believed this truck was the same truck for which he had previously obtained a seizure warrant for civil forfeiture based on the use of the truck in a methamphetamine transaction. Although Harrington knew that the registered owner of the truck was Terry Reimer, Harrington suspected that Dennis Reimer was the actual owner of the vehicle because Dennis Reimer had driven the vehicle on the day of the methamphetamine transaction that formed the basis for the seizure warrant for civil forfeiture.

With the assistance of other officers, Harrington began surveillance of the vehicle. While Harrington left to retrieve a copy of the seizure warrant, the other officers watched the truck waiting for the operator of the vehicle to return. Harrington came back with the warrant and the surveillance then continued. At approximately 1:15 a.m., Sgt. Majors (Majors) observed Dennis Reimer and two other individuals emerge from the Hi Ho Club and enter the pickup truck. Majors followed as the pickup truck was driven a short distance down an alley from the club. The truck came to a stop. Majors did not activate either the lights or siren of his police car, rather he drove past the truck and then turned around to park next to it.

Dennis Reimer was already outside of the vehicle when Majors approached him. Reimer was on the passenger side of the vehicle and had a grey cup with a lid in his hand. He had a coat fastened around his waist area. Majors identified himself as a police officer and told Reimer to put the cup down and place his hands on his head. Reimer complied and Majors approached closer to conduct a pat-down search of Reimer's per-

son. During this interaction Majors smelled the odor of an alcoholic beverage on Reimer's breath. Another officer informed Reimer that the officers were seizing the truck pursuant to the seizure warrant.

Majors called for a Garden City police officer to administer roadside sobriety maneuvers to Reimer. The Garden City police officer responded to the scene and had Reimer perform a series of tests. The Garden City officer then informed Majors that although Reimer had been drinking, he was not intoxicated such that he should be charged with driving a vehicle under the influence of alcohol.

During this time Majors had the grey mug in his possession. Majors had first retrieved the mug from the location that Reimer had set it while awaiting the arrival of the Garden City officer who administered the roadside sobriety maneuvers. During the time that Reimer had been performing roadside tests, Majors had inspected the contents of the mug by opening the lid and smelling the contents. Majors smelled an alcoholic beverage in the cup which, based on his visual observation with a flashlight, he believed to be whiskey mixed with Coke and ice cubes.

Once the Garden City officer informed Majors that Reimer should not be charged with driving under the influence, Majors directed the officer to issue Reimer a summons for an open container violation. Although Majors later testified that he intended for Reimer to be charged with a violation of a state statute, at the time he did not specify under what statute or ordinance Reimer should be cited. Reimer asked if he was free to go, Majors said he would be as soon as he received the summons.[1]

Reimer asked if he could have his cup back. Majors replied that he was keeping it as evidence. Majors began to pour the liquid which he believed to be whiskey and Coke from the cup onto the ground. In the course of doing this he detected a rattling noise coming from the cup. Turning the cup upside down to determine where the rattling noise came from, Majors noticed that the cup had a removable bottom. Majors removed the bottom of the cup and discovered a glass vial and four small plastic baggies, all of which contained a substance he believed to be methamphetamine. The compartment in which the drugs were found was not designed for storage, but rather to provide an insulating air compartment between the outer surface of the mug and the interior area in which a hot or cold liquid is held. This hollowed out area can only be seen by prying off the tight-fitting bottom part of the mug. Unlike the looser-fitting lid which has a protruding tab to facilitate easy removal, the bottom of the mug is sealed snugly and only comes off if pried with a strong fingernail or a flat object such as a coin or screwdriver.

Reimer was arrested and charged with possession of a controlled substance with intent to distribute. Reimer filed a motion to suppress all evidence obtained from what he maintained was an unlawful search.

The district court denied Reimer's motion to suppress. In addition to upholding the lawfulness of the officers' contacts with Reimer, the district court held that Majors was entitled to seize the mug as evidence of an open container violation and that it was reasonable for him to dispose of the contents and search it when he heard the rattling noise.

Reimer entered a conditional plea of guilty to the single charged count of possession of methamphetamine with intent to distribute; the plea was conditioned on Reimer's reservation of his right to appeal the denial of the motion to suppress. On appeal, Reimer challenges the validity of the seizure warrant, the lawfulness of the officer's seizure of the mug, and the constitutionality of the search of the interior compartment of the mug.

## II.

## ANALYSIS.

### A. VALIDITY OF THE WARRANT

Reimer first argues that the police officers had no lawful basis to contact him and con-

---

1. The record before this Court does not include a copy of any summons issued to Reimer for an open container violation. There was no testimony by Majors or any other witness as to whether Reimer was ever charged with an open container violation under either a state statute or a municipal ordinance.

duct a pat-down search of his person because the forfeiture warrant was invalid. Specifically, Reimer argues that the warrant was invalid because the affidavit submitted to the Magistrate who issued the seizure warrant relied on incorporated police reports that were not in fact attached. The State contends that the validity of the warrant is immaterial based on the facts of the case.

However, because it is not necessary for resolution of the case to decide this question, for purposes of analysis only, we will proceed on the assumption that the police officers acted lawfully in contacting Reimer, subjecting him to a pat-down search, and having him perform the roadside maneuvers.

## B. SEIZURE OF THE MUG

Reimer challenges the seizure of the mug to show an open container violation. Reimer maintains that the officers had no probable cause to believe he had violated the Idaho "open container" statute, I.C. § 23–505, because it only covers open containers that were at one time completely sealed in "original" packaging. Reimer also suggests the seizure of the cup without the contents was unlawful because the cup, once emptied, was of no evidentiary value even if Reimer's actions were covered by the open container statute.

Here again, determination of this issue is unnecessary to our decision of this appeal. Accordingly, we also accept, for purposes of analysis only, the State's argument that Majors lawfully seized the mug and disposed of its contents.

## C. THE WARRANTLESS SEARCH OF THE MUG

Having given the State the benefit of the assumptions described above, we commence our analysis at the point in the course of events when Majors had in his possession the empty mug which he had just noticed made a peculiar rattling noise.

Reimer argues that the seizure of an article having the capability of containing other articles, even if lawful, does not of itself justify a general exploratory search of anything contained within the article initially seized. The State responds that once the cup was lawfully seized, Reimer no longer had a protectable privacy interest in its internal compartments. According to the State, the officers were therefore entitled to search the interior either for additional evidence or as part of an inventory search.

■ As always, we begin with the well-established principle that:

> each Fourth Amendment inquiry involves determining: (1) whether the defendant had an actual, subjective expectation of privacy; and (2) whether the defendant's expectation of privacy, viewed objectively, was reasonable and justifiable under the circumstances.

*State v. Wilkins*, 125 Idaho 215, 222, 868 P.2d 1231, 1238 (1994). In this case there is no dispute that, by secreting contraband in this unusual place, Reimer evidenced an actual and subjective expectation of privacy in the interior compartment of the mug. The dispositive inquiry is therefore whether that expectation was objectively reasonable under these circumstances. We believe that it was.

■ The interior compartment of the mug was tightly sealed. The contents of the compartment were not visible without opening the compartment. Reimer initially had the mug in his personal possession, and there is no evidence in the record suggesting that he ever abandoned the mug. Viewed together, these facts demonstrate that, under the circumstances, Reimer's mug was as deserving of Fourth Amendment protection as a suitcase or any other closed container used to transport personal effects.

> Individuals can manifest legitimate expectations of privacy by placing items in closed, opaque containers that conceal their contents from plain view. *United States v. Ross*, 456 U.S. 798, [822–23]; 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982); *Robbins v. California*, 453 U.S. 420 [426–27]; 101 S.Ct. 2841, 2846, 69 L.Ed.2d 744 (1981); *United States v. Chadwick*, 433 U.S. 1, 11, 97 S.Ct. 2476, 2483, 53 L.Ed.2d 538 (1977). The type of container generally does not affect the protection afforded by the Fourth Amendment. The Supreme Court has concluded that "a constitutional

distinction between 'worthy' and 'unworthy' containers would be inappropriate." *Ross*, [456 U.S. at 822] 102 S.Ct. at 2171. Nor is the fact, that a container is not typically used to transport personal effects particularly relevant to the analysis. *United States v. Villarreal*, 963 F.2d 770, 773 (5th Cir.1992).

■ Nevertheless, the State argues that Reimer no longer had a reasonable privacy expectation in the mug once it had been seized as evidence of the open container violation. In support of this assertion, the State relies on *Thomas v. Hungerford*, 23 F.3d 1450 (8th Cir.1994), and *United States v. Simpson*, 10 F.3d 645 (9th Cir.1993), *vacated on other grounds*, 44 F.3d 836 (9th Cir.1995). *Thomas* could not be more inapposite, as it is a case in which the defendant actually requested the police conduct an inventory of his seized property; *Simpson* merely held that the defendant in that case had no protected privacy interest in the internal mechanisms of a seized firearm once the officers unloaded it as a "safety precaution." *Id.* at 648. Not only is the State's argument unsupported by *Thomas* or *Simpson*, the Supreme Court has held directly to the contrary:

> Even if the item is a container, its seizure does not compromise the interest in preserving the privacy of its contents because it may only be opened pursuant to either a search warrant ... or one of the well-delineated exceptions to the warrant requirement.

*Horton v. California*, 496 U.S. 128, 141 n. 11, 110 S.Ct. 2301, 2310 n. 11, 110 L.Ed.2d 112 (1990) (citations omitted).

Having determined that the interior compartment of the mug was an area for which Reimer had an actual and objectively reasonable expectation of privacy, we next proceed to assess the consequences of the police officer's warrantless search of that protected space.[2]

■ Warrantless searches are "deemed to be '*per se* unreasonable.'" *State v. Bottelson*, 102 Idaho 90, 92, 625 P.2d 1093, 1095

(1981) (*quoting Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980)). However, such a search may still be constitutional if the State can satisfy its burden "to show that the search was pursuant to one of the exceptions to the warrant requirement." *Bottelson*, 102 Idaho at 92, 625 P.2d at 1095. The single recognized exception to the warrant requirement relied on by the State in this case is the inventory exception.

■ In the context of vehicle inventory searches we have recognized that "[i]nventory searches are permissible." *State v. Smith*, 120 Idaho 77, 80, 813 P.2d 888, 891 (1991) (*citing South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)). Inventory searches are excepted from the warrant requirement because the non-investigatory purpose of the searches is to allow police officers to protect a subject's property and thus in turn enable the officers to defend against liability claims based on missing property. *See Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) (the United States Supreme Court held that a warrantless inventory search does not violate the Fourth Amendment where a policy exists with standardized criteria or established procedures that sufficiently regulate the search). To insure that the purpose providing the justification for an inventory search is genuine, the government must show that any inventory search was conducted in accordance with standardized criteria or established procedures. *Id.* Even when conducted away from the police station with no automobile involved, inventory searches have been upheld for searches of lawfully seized locked containers when the search was pursuant to an established departmental procedure. *See, e.g., United States v. Evans*, 937 F.2d 1534 (10th Cir.1991). (Inventory search of a carry-on bag conducted at a bus station was held as a lawful search.)

■ No evidence was introduced before the district court to establish that the search was conducted in connection with any department policy and the argument was not preserved for appeal. Thus, while it is certainly

---

2. The State does not suggest, nor can it be seriously argued, that the search of the interior of the mug was in any way authorized by the seizure warrant for the vehicle.

possible that the State might have been able to assert the inventory exception successfully as a justification for the warrantless search before the district court, it did not do so.

■ The State does not explicitly articulate any other recognized exception to the warrant requirement in order to justify the search.[3] At one point in its brief the State claims that Majors' inspection was lawful because it was "to determine the cause of the rattle." The State never amplifies on this statement with any explanation of how the rattling sound of a solid object hidden inside the sealed compartment of a mug in any way relates to an "open container" violation. And even if we were to give the State's argument an exceedingly generous reading as an allusion to the "plain view container exception," there is absolutely no evidence in the record suggesting that the rattling noise readily disclosed the illegal contents of the interior compartment. *See United States v. Donnes,* 947 F.2d 1430, 1437 (10th Cir.1991) ("the plain view container exception to the warrant requirement of the fourth amendment remains valid. Thus, when a container is 'not closed', or 'transparent', or when its 'distinctive configuration' … 'proclaims its contents', the container supports no reasonable expectation of privacy and the contents can be said to be in plain view" (footnote and citations omitted); *see also United States v. Miller,* 769 F.2d 554, 560 (9th Cir.1985). Majors' curiosity about the rattling noise of the cup did not justify a warrantless search of the inside compartment of the cup because there was nothing about the rattling sound of solid objects that suggested further evidence related to the justification for seizure of the mug based on its liquid contents.

Because the State has failed to meet its burden of establishing the applicability of any exception to the search warrant requirement, the presumptive unreasonableness of

this search, we hold that the district court erred in not granting Reimer's motion to suppress the evidence seized.

## III.

## CONCLUSION.

The district court's ruling denying Reimer's motion to suppress is reversed and the case is remanded for further proceedings consistent with this opinion.

JOHNSON and TROUT, JJ., and TRANSTRUM, Justice Pro Tem, concur.

SILAK, Justice, dissenting.

I respectfully dissent from part II.C. because I believe that under the circumstances of this case, Reimer had no objectively reasonable and justifiable expectation of privacy once his plastic cup was lawfully seized.

The Court's opinion correctly focuses on whether Reimer had an objectively reasonable expectation of privacy in the mug's interior under the circumstances (Opinion at 217, 899 P.2d at 430, *citing State v. Wilkins* 125 Idaho 215, 222, 868 P.2d 1231, 1238 (1994)), but reaches the wrong conclusion. In support of the conclusion that Reimer's mug deserved Fourth Amendment protection, the Court's opinion says the mug's bottom was tightly sealed, the interior contents were not visible without being opened, and Reimer had the mug in his possession and never abandoned it. (Opinion at 217, 899 P.2d at 430). This analysis is unconvincing, because it ignores the fact that the cup had already been properly seized as evidence.

When Reimer asked if he could have his cup back, Sgt. Majors replied that he was keeping it as evidence. At that point, Reimer had no objectively reasonable and justifiable expectation of privacy in the cup's inner

---

3. The State contends that the search was authorized under the reasoning of *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). A review of *Edwards* reveals that it does not support the State's position. In *Edwards,* although the defendant was arrested and jailed, he was allowed to retain his personal clothing until the next day when substitute clothing was obtained. Recognizing that the defendant's clothing could have initially been seized

and searched as part of the administrative jail booking procedure, the Supreme Court simply held that the justifiable delay did not prevent the police from later conducting the same type of search they were initially entitled to undertake. In short, *Edwards* is an inapplicable "booking" case involving a search of clothing which in no way authorizes the search of a closed container seized apart from a booking procedure.

contents. One would reasonably expect that the cup would be handled and its contents tested. This Court has declared that a legitimate expectation of privacy means more than a subjective expectation of not being discovered. *State v. Wilkins* 125 Idaho 215, 222, 868 P.2d 1231, 1238 (1994) (*quoting State v. Jennings*, 101 Idaho 265, 611 P.2d 1050, 1051 (1980)). No reasonable person under the circumstances could justifiably expect that the police would have to obtain a separate search warrant before removing the cup's bottom.

According to the Court, however, a lawfully seized piece of evidence with an interior cannot be opened without the police first obtaining a separate search warrant. The United States Supreme Court has recognized that such a blanket requirement would impose substantial burdens on law enforcement without advancing legitimate Fourth Amendment values. In a concurring opinion in *Robbins v. California*, 453 U.S. 420, 433–434, 101 S.Ct. 2841, 2849–50, 69 L.Ed.2d 744 (1981), quoted favorably in *United States v. Ross*, 456 U.S 798, 816–17 n. 21, 102 S.Ct. 2157, 2168 n. 21, 72 L.Ed.2d 572 (1982), Justice Powell declared:

> While the plurality's blanket warrant requirement does not even purport to protect any privacy interest, it would impose substantial new burdens on law enforcement. Confronted with a cigar box or a Dixie cup in the course of a probable-cause search of an automobile for narcotics, the conscientious policeman would be required to take the object to a magistrate, fill out the appropriate forms, await the decision, and finally obtain the warrant. Suspects or vehicles normally will be detained while the warrant is sought. This process may take hours, removing the officer from his normal police duties. Expenditure of such time and effort, drawn from the public's limited resources for detecting or preventing crimes, is justified when it protects an individual's reasonable privacy interest. In my view, the plurality's requirement cannot be so justified. The aggregate burden of procuring warrants whenever an officer has probable cause to search the most trivial container may be heavy and will not be compensated by the advance-

ment of important Fourth Amendment values.

Although the precise holding of *Ross* may not control here (pursuant to "automobile exception" to the Fourth Amendment's warrant requirement, officers who have probable cause may conduct warrantless search of vehicle and its contents that is as thorough as a magistrate could authorize by warrant), the above quoted rationale is appropriate.

There was probable cause to search the cup after Sgt. Majors heard the suspicious rattling noise. The Court's opinion says the rattling noise did not justify a warrantless search, because nothing about the noise suggested further evidence regarding the cup's liquid contents. (Opinion at 219, 899 P.2d at 432). I disagree with the Court's hindsight appraisal. The glass vial could easily have contained whiskey, or bourbon, or rum, instead of methamphetamine. If it had, such evidence could certainly be probative to the open container violation. After having smelled alcohol on Reimer's breath, after having smelled alcohol in the cup, and then hearing the suspicious rattling noise, Sgt. Majors had probable cause to further search the cup's contents. We should not impose the immense burden of procuring warrants "whenever an officer has probable cause to search the most trivial container." (Powell, *supra*). The Fourth Amendment protects against *unreasonable* searches. This was no unreasonable search.

The Court's opinion quotes a footnote in *Horton v. California*, 496 U.S. 128, 141 n. 11, 110 S.Ct. 2301, 2310 n. 11, 110 L.Ed.2d 112 (1990) for the proposition that Reimer continued to have a privacy interest after police seized the cup. (Opinion at 218, 899 P.2d at 431) That footnote is dicta. In *Horton*, the Supreme Court held that a police officer, who was authorized by a warrant to search a dwelling, could seize evidence observed during the search under the "plain view" doctrine, even though the discovery of the evidence was not inadvertent. 496 U.S. at 142, 110 S.Ct. at 2310–2311. The footnote quoted in this Court's opinion was not necessary to the holding in *Horton*, and there was no issue in *Horton* regarding the further search

of evidence already lawfully seized. Likewise, in *U.S. v. Villarreal*, 963 F.2d 770 (5th Cir.1992) (*see* Opinion at 218–19, 899 P.2d at 430–31), the evidence searched without a warrant had not been previously seized as evidence of a crime. *Villarreal*, 963 F.2d at 772–73.

In view of the heavy burdens on limited police and judicial resources, it is unreasonable under the circumstances here to require the police to get a search warrant before they may remove the bottom of a plastic cup which has been lawfully seized as evidence. Accordingly, I dissent.