953 P.2d 583

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Ed L. CHRISTENSEN, Defendant–Appellant.**

**No. 23274.**

Supreme Court of Idaho,
Boise, October 1997 Term.

Feb. 26, 1998.

---

Mark S. Moorer, Moscow, for Defendant–Appellant.

Alan G. Lance, Attorney General, Catherine O. Derden, Deputy Attorney General, Boise, for Plaintiff–Respondent. Catherine O. Derden argued.

TROUT, Chief Justice.

This is an appeal from the district court's decision to deny a motion to suppress evidence. The evidence was seized by virtue of a search warrant obtained using information gathered during a warrantless entry by police into the curtilage of the defendant's home.

## I.

### BACKGROUND

On September 25, 1995, Detective Patrick Kelley of the Quad Cities Drug Task Force received a tip that someone was growing marijuana in a large greenhouse near milepost 350 in Latah County. The next day, Kelley contacted Detective Val Barber of the Moscow Police Department. Barber told Kelley that the only road with a milepost 350 was Highway 95. The two detectives then set off in Kelley's unmarked van to survey the area around milepost 350. Several residences were located in the area. The officers noticed that one, a mobile home belonging to appellant Ed L. Christensen, had a small glass lean-to (hot hut) attached to the back of it.

The officers decided to stop and question the residents of the houses starting with Christensen's. Kelley testified that the reason he picked Christensen's home was that it appeared to have been there the longest, so

he thought the resident might know about the other houses in the area. Kelley said his intention was to make contact with the resident, and if the resident was friendly, ask for information about the other houses in the area. The detectives parked their van at the head of Christensen's driveway. Kelley told Barber to wait in the car while he questioned the resident. Kelley then removed his badge, gun and all other indicators that he was a police officer and proceeded down the driveway to the mobile home. To walk down the driveway, Kelley had to step over or around a closed but unlocked gate on which was posted a "no trespassing" sign. There was no "traditional fence" surrounding the property, but Christensen argues that shrubbery planted by him created a "green barrier."

As Kelley walked down the driveway, he testified that he made eye contact with Christensen through a bay window at the back of the mobile home. Kelley further testified, and the district court found, that after making eye contact, Christensen left the window and moved toward the back door. Because he assumed that Christensen was going to the back door, Kelley left the driveway and walked toward the back door of the mobile home. The hot hut was located just beyond the back door. To get to the back door, Kelley walked through an area containing weeds, old cars and appliances, an area the district court characterized as "covered with a mixture of grass, weeds and dirt." When Kelley was immediately behind a shop next to the mobile home, and approximately 20 feet from the hot hut, he testified that he could identify the contents of the hot hut as marijuana.

At this point, Christensen exited the mobile home through the back door, confronted Kelley and told him to leave. Kelley told Christensen that he was looking for a nearby home to repair a satellite dish. Christensen repeated his demand that Kelley leave, which Kelley did. Based on his observation of the marijuana in the hot hut, Kelley obtained a search warrant that was executed the next day. Christensen was arrested and charged with manufacturing a controlled substance.

Christensen filed a motion to suppress the evidence obtained using the search warrant alleging that the information used to secure the warrant had been obtained in violation of the Fourth Amendment of the United States Constitutions and Art. I, § 17 of the Idaho Constitution. After a hearing, the district court issued a memorandum opinion and order denying the motion to suppress. Christensen entered a conditional guilty plea to manufacturing marijuana, reserving the right to appeal the denial of his motion to suppress. The district court withheld judgment and placed Christensen on probation for three years. Christensen timely appealed.

## II.

## STANDARD OF REVIEW

■ In reviewing a motion to suppress evidence, the trial court's findings of fact are overturned only if not supported by substantial evidence. *State v. Weber*, 116 Idaho 449, 452, 776 P.2d 458, 460–61 (1989). This Court exercises free review over the determination of whether, in light of the facts, the constitutional requirements for a search have been met. *Id.*

## III.

## ART. I, § 17 OF THE IDAHO CONSTITUTION

■ The language of Art. I, § 17 of the Idaho Constitution closely parallels that of the Fourth Amendment.[1] This similarity in language, however, does not require this Court to follow United States Supreme Court precedent in interpreting our own constitution.

The reason is the federal and state constitutions derive their power from independent sources. It is thus readily apparent that state courts are at liberty to find within the provisions of their own constitutions greater protection than is afforded under the federal constitution as interpreted by the United States Supreme Court.

This is true even when the constitutional provisions implicated contain similar phraseology. Long gone are the days when state courts will blindly apply United States Supreme Court interpretation and methodology when in the process of interpreting their own constitutions. *State v. Newman*, 108 Idaho 5, 10, 696 P.2d 856, 861, n. 6 (1985) (citation omitted).

■ Like the Fourth Amendment, the purpose of Art. I, § 17 is to protect Idaho citizens' reasonable expectation of privacy against arbitrary governmental intrusion. *State v. Thompson*, 114 Idaho 746, 760 P.2d 1162 (1988). To this end, warrantless searches are presumed to be unreasonable unless the search can be justified under one of the exceptions to the warrant requirement. *State v. Reimer*, 127 Idaho 214, 899 P.2d 427 (1995). There is no contention by the State that an exception to the warrant requirement applies to this case. Instead, the State argues that for the purposes of the Fourth Amendment and the Idaho Constitution no search took place.

### A. *Open View Doctrine.*

■ Christensen argues that the search cannot be justified under the plain view exception to the warrant requirement. We agree, but for the reason that the plain view exception does not apply. The plain view exception allows police officers to make warrantless seizures of evidence viewed from a location where the officer has a right to be. *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). Thus, the plain view exception applies to warrantless seizures of readily visible items, not warrantless searches. Warrantless searches are properly analyzed under the open view doctrine.

■ Under the open view doctrine, a police officer's observations made from a location open to the public do not constitute a search. This is because one cannot have a reasonable expectation of privacy in what is knowingly exposed to public view. *Katz v.*

---

1. Art. I, § 17 of the Idaho Constitution states: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized."

*United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Clark,* 124 Idaho 308, 859 P.2d 344 (Ct.App.1993). The State argues that because Kelley observed the marijuana from a location open to the public, no search took place.

## B. *Visibility of the Hot Hut.*

■ The State argues that Christensen could not have a reasonable expectation of privacy in the hot hut because, being visible from the highway and made of glass, the officers could have observed the marijuana with the use of binoculars. Although the record indicates that the officers had binoculars in their van, there is no evidence that they actually used them to look into the hot hut. Absent any competent evidence that the marijuana plants were in fact visible from the highway, we decline to uphold the search based upon speculation about what the officers might have been able to see.

## C. *Entry onto the Property.*

■ Unlike many cases involving a search of property adjacent to a home, this case does not require that the Court determine if Kelley invaded the curtilage. The curtilage is that area immediately surrounding and associated with a residence in which a person has a reasonable expectation of privacy. *State v. Webb,* 130 Idaho 462, 943 P.2d 52 (1997). The State admits that by approaching Christensen's house by way of the driveway, Kelley was within the curtilage as defined by Idaho courts.

■ Although citizens have a reasonable expectation of privacy in the areas immediately surrounding their homes, not all areas of the curtilage are equal in terms of privacy.

> [T]he presence of a police officer within the curtilage does not, *ipso facto,* result in an unconstitutional intrusion. There is an implied invitation for the public to use access routes to the house, such as parking areas, driveways, sidewalks, or pathways to the entry, and there can be no reasonable expectation of privacy as to observations which can be made from such areas. Like other citizens, police with legitimate business are entitled to enter areas of the curtilage that are impliedly open to public use.

*State v. Clark,* 124 Idaho 308, 313, 859 P.2d 344, 349 (Ct.App.1993) (citations omitted).

■ The ability of police to move within the curtilage, however, is not unlimited. "Police officers without a warrant are permitted the same intrusion and the same level of observation as one would expect from a 'reasonably respectful citizen'." *Id.* The State argues that Christensen's posting of a no trespassing sign at the gate was insufficient to create a reasonable expectation that no reasonably respectful citizen would approach the house.

■ Although we agree that there is an implied invitation for the public to use normal access routes to a house, this implied invitation is not irrevocable. We believe that the reasonably respectful citizen when confronted with a closed gate and a no trespassing sign does not proceed further, but respects the request for privacy that such efforts convey.

■ The State in its argument emphasized the fact that there was no fence or other physical barrier to entry surrounding the property. While the presence of a fence is a factor to consider in determining whether an area is open to the public, it is not dispositive. Many factors such as geography, aesthetics and economics may go into the decision whether or not to erect a fence. We do not believe that the ability to exclude the public is available only to those Idaho citizens with the resources to construct extensive fencing. We note that this is not a case where the message to the public was ambiguous. The no trespassing sign was clearly posted on a gate across the only public access to the property. In light of this unambiguous message, it is unclear what the presence of a fence would add. In short, Idaho citizens, especially those in rural areas, should not have to convert the areas around their homes into the modern equivalent of a medieval fortress in order to prevent uninvited entry by the public, including police officers.

This opinion should not be read to mean that a no trespassing sign creates an absolute

barrier to warrantless entry into the curtilage by police. To the contrary, it is not difficult to imagine circumstances where it would be entirely reasonable for a police officer, or for that matter any citizen, to ignore a no trespassing sign in order to approach a house. However, this case does not present such a set of circumstances. By his own testimony, Kelley approached the Christensen home only to make general inquiries about nearby residents. Under these circumstances, Kelley had no more right to ignore the no trespassing sign and closed gate than would a door-to-door solicitor. We therefore hold that Kelley's disregard of the closed gate and no trespassing sign amounted to an unreasonable search in violation of Art. I, § 17 of the Idaho Constitution. Thus, we reverse the district court's denial of the motion to suppress.

■ Because we hold that Kelley's entry onto the driveway violated the Idaho Constitution, we need not address the constitutionality of Kelley's subsequent actions or Christensen's arguments under the Fourth Amendment. We realize that this ruling does not provide a bright line rule for when police may enter the curtilage without a warrant. Search and seizure questions require a delicate balance between the need for police to effectively investigate crime and citizens' rights to be secure in their homes from unreasonable government intrusion. The weighing of facts needed to reach this balance precludes the use of simple rules, but instead requires a case by case determination.

## IV.

### CONCLUSION

For the reasons stated above, the district court's denial of the motion to suppress is REVERSED and the case REMANDED for further proceedings.

JOHNSON and SILAK, JJ., concur.

SCHROEDER, Justice, concurring in the result.

I concur in the result in this case but do not join in the discussion in Section III concerning the relationship between the interpretation of art. I, § 17 of the Idaho Constitution and the United States Supreme Court precedent in interpreting the Fourth Amendment to the United States Constitution. There are cases in which that relationship might be important and in which there might be a dispute as to the approach to be taken in determining the applicable rule; however, this is not one of those cases. The search in this case was unreasonable under either the Fourth Amendment to the United States Constitution or art. I, § 17 of the Idaho Constitution. No more need be said about the relationship between the two provisions in this case. That question should be left to a case in which it is important.

WALTERS, J., concurs with Justice SCHROEDER's concurrence in the result.