611 P.2d 1050

STATE of Idaho, Plaintiff-Respondent,

v.

Donald L. JENNINGS,
Defendant-Appellant.

No. 12919.

Supreme Court of Idaho.

May 30, 1980.

Mark L. Clark of Kibler, Hamilton & Clark, Nampa, for defendant-appellant.

David H. Leroy, Atty. Gen., L. Mark Riddoch, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BISTLINE, Justice.

Defendant-appellant Donald Jennings was convicted by a jury of two counts of delivering heroin. Before trial, the defendant moved to suppress videotapes and sound recordings made by the police of the two transactions. Defendant appeals from the judgment of conviction, challenging the order denying his motion to suppress.

For approximately six months (February to July 1977), the City-County Narcotics Division of Canyon County operated a "storefront" undercover operation at the Darling Motel in Caldwell. The Narcotics Division rented two adjacent rooms at the motel. One room (room no. 8) was set up as a normal motel room, but with a concealed microphone in the door jamb and a two-way mirror in the wall by which officers in the adjacent room could observe, videotape and record the transactions in room no. 8.

Mickey Parks, an undercover agent, used room no. 8 to conduct illegal activities, although he did not live there personally. The defendant and Parks both testified that the defendant had lived in room no. 8, but they disagreed as to when: defendant testified that as far as he knew he had lived there in March when the alleged transactions occurred, but he wasn't sure; Parks testified that the defendant lived there in

May or June, but not in March. Lt. Galland, one of the officers operating the videotape equipment, testified that to his knowledge defendant was not living in room no. 8 in March, although he felt that the defendant was living in another room in the motel.

Lt. Galland also testified that he had observed the defendant through the two-way mirror between fifteen and twenty times. No search warrant was ever obtained, although Officer Galland testified that he would have gotten a warrant if the prosecuting attorney had advised him that he needed one.

On March 4 and 16, 1977, the officers in the adjoining room observed, videotaped and recorded the defendant allegedly delivering heroin to Parks. The officers testified to observing the transactions, and the tapes were shown to the jury.

Defendant argues on appeal that admitting the videotapes and recordings into evidence violated both his Fourth and Fifth Amendment rights, and that they should have been suppressed. He does not argue on appeal that the testimony of Parks or the officers as to their observations of the transactions should also have been excluded.

▆ The Fourth Amendment protects those claiming a "justifiable," a "reasonable," or a "legitimate" expectation of privacy from government-initiated electronic surveillance. *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). *See United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

▆ A legitimate expectation of privacy "means more than a subjective expectation of not being discovered." *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 430 n.12, 58 L.Ed.2d 387 (1978). Thus the Fourth Amendment does not protect "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa v. United States,* 385 U.S. 293, 302, 87 S.Ct. 408, 413,

17 L.Ed.2d 374 (1966). Nor does it protect the defendant where a police informant records the conversation on electronic equipment he carries on his person, *Lopez v. United States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), or where the informant carries electronic equipment "which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency." *United States v. White,* 401 U.S. 745, 751, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971). *See also United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). As stated in *Lopez v. United States,* 373 U.S. 427, 439, 83 S.Ct. 1381, 1388, 10 L.Ed.2d 462 (1963)

> "[t]he Government did not use an electronic device to listen in on conversations it could not otherwise have heard. Instead, the device was used only to obtain the most reliable evidence possible of a conversation in which the Government's own agent was a participant and which that agent was fully entitled to disclose.
>
> . . .
>
> "Stripped to its essentials, petitioner's argument amounts to saying that he has a constitutional right to rely on possible flaws in the agent's memory, or to challenge the agent's credibility without being beset by corroborating evidence that is not susceptible of impeachment. For no other argument can justify excluding an accurate version of a conversation that the agent could testify to from memory."

In *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), the court was confronted with the issue of "whether the Fourth Amendment bars from evidence the testimony of governmental agents who related certain conversations which had occurred between defendant White and a government informant, Harvey Jackson, and which the agents overheard by monitoring the frequency of a radio transmitter carried by Jackson and concealed on his person." *Id.* at 746–47, 91 S.Ct. at 1123 (footnote omitted). Four of the conversations took place in Jackson's

home, two took place in his car, one in a restaurant and one in defendant's home. The Court in a plurality opinion upheld the admissibility of the testimony as follows:

"Concededly a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. *Hoffa v. United States*, 385 U.S. 293, at 300–303, [87 S.Ct. 408, at 412–414] 408, 17 L.Ed.2d 374. For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, *Lopez v. United States, supra*; (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency. *On Lee v. United States, supra* [343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270]. If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.

"Our problem is not what the privacy expectations of particular defendants in particular situations may be or the extent to which they may in fact have relied on the discretion of their companions. Very probably, individual defendants neither know nor suspect that their colleagues have gone or will go to the police or are carrying recorders or transmitters. Otherwise, conversation would cease and our problem with these encounters would be nonexistent or far different from those now before us. Our problem, in terms of the principles announced in *Katz*, is what

expectations of privacy are constitutionally 'justifiable'—what expectations the Fourth Amendment will protect in the absence of a warrant. So far, the law permits the frustration of actual expectations of privacy by permitting authorities to use the testimony of those associates who for one reason or another have determined to turn to the police, as well as by authorizing the use of informants in the manner exemplified by *Hoffa* and *Lewis* [*Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312]. If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case. See *Lopez v. United States*, 373 U.S. 427, [83 S.Ct. 1381, 10 L.Ed.2d 462] (1963).

"Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police. If he sufficiently doubts their trustworthiness, the association will very probably end or never materialize. But if he has no doubts, or allays them, or risks what doubt he has, the risk is his. In terms of what his course will be, what he will or will not do or say, we are unpersuaded that he would distinguish between probable informers on the one hand and probable informers with transmitters on the other. Given the possibility or probability that one of his colleagues is cooperating with the police, it is only speculation to assert that the defendant's utterances would be substantially different or his sense of security any less if he also thought it possible that the suspected colleague is wired for sound. At least there is no persuasive evidence that the difference in this respect between the electronically equipped and the unequipped agent is substantial enough to require discrete constitutional recognition, particularly under the Fourth Amendment which is ruled by fluid concepts of 'reasonableness.'

"Nor should we be too ready to erect constitutional barriers to relevant and probative evidence which is also accurate and reliable. An electronic recording will many times produce a more reliable rendition of what a defendant has said than will the unaided memory of a police agent." 401 U.S. at 751–53, 91 S.Ct. at 1125–1126.

■ Although the United States Supreme Court has not specifically dealt with the question before us, we find the reasoning in *White* controlling. The only other case dealing with a similar videotaping issue which we find,[1] *Avery v. State*, 15 Md. App. 520, 292 A.2d 728 (1972), cert. denied 410 U.S. 977, 93 S.Ct. 1499, 36 L.Ed.2d 173 (1973), also held *White* controlling. In that case, Miss Hall reported to the police that the defendant, a doctor, had sexually molested her. With the agreement of Miss Hall and her neighbor, the police installed a close-circuit television camera in Miss Hall's apartment and a monitor in the adjoining apartment. When defendant again visited Miss Hall in her apartment, he injected her intravenously, causing her to lose consciousness, and he then began sexually molesting her. This time, however the whole incident was taped and observed by those watching the monitor. The court held that the tape was admissible:

"[I]n the instant case we have an electronic interception and video transmission of the conduct of the accused toward the victim while in the victim's house which was transmitted to the police *with the full cooperation and consent of the victim as a party to that conduct.* The situation here is comparable to one where the conversations between a government agent and the accused are transmitted to police authority by a radio transmitter secreted on the person of the government agent (informer) with the cooperation and ap-

proval of the agent. . . . If the transmittal of the verbal *conversation* to the police through the cooperation of an informer does not constitute an unreasonable seizure in violation of a 'justifiable expectation of privacy' in *White*, we see no good or sufficient reason to conclude that a video transmittal of the accused's conduct brought about by the cooperation of Miss Hall should be interpreted as constituting an unreasonable seizure in violation of the appellant's 'justifiable expectation of privacy' in the instant case." 292 A.2d at 742–43.

Defendant attempts to distinguish *White* on two grounds: (1) *White* dealt with electronic monitoring of a conversation rather than videotaping, and (2) unlike in *White*, none of the electronic devices used here were on the person of the government agent. As to the first distinction, we can see no reason why a person's justifiable expectations of privacy would be greater where videotapes are made than where just sound recordings are made. It is not the nature of the recording that is at issue but whether the defendant has an expectation of privacy such that *any* recording would violate the Fourth Amendment. The defendant is relying on the discretion of the person to whom he is talking, and just as that person can testify as to statements made by the defendant, *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), so he can testify as to physical actions of the defendant. The videotapes, just like the sound recordings, simply produce the most reliable evidence of the actual transaction, and there is no apparent reason why a sound recording should be admissible and a videotape inadmissible.

The second distinction drawn by the defendant, although *much more troublesome,*

---

1. Defendant cites *People v. Teicher*, 90 Misc.2d 638, 395 N.Y.S.2d 587 (Sup.1977), in support of his contention that a warrant is required. In that case the state obtained a warrant and installed videotape equipment in a dentist's office, and subsequently taped the defendant-dentist sexually molesting a patient. The court held that the videotape was admissible, and the

defendant urges that this illustrates the necessity of obtaining a search warrant before installing video equipment. That case is distinguishable, however, because the court never discussed whether a warrant was required and because it involved entering the defendant's office in order to install the taping equipment.

is also not controlling. Although we are aware of the dangerous potential of an Orwellian state inherent in universal uncontrolled electronic monitoring and videotaping by the State, *see, e. g.,* Fried, Privacy, 77 Yale L.J. 475 (1968); H. Schwartz, Taps, Bugs and Fooling the People (1977); Electronic Visual Surveillance and the Fourth Amendment: The Arrival of Big Brother?, 3 Hastings Const.L.Q. 261 (1976), we do not feel that the use of recordings by the police in their "storefront operations" where they control the rooms and where their agent is involved in the transaction poses such a threat. This is not a case of electronic snooping, where the police indiscriminately monitor motel rooms to discover what is happening in them. *See, e. g.,* 3 Hastings Const.L.Q., *supra.* Nor is this a case where the police had to surreptitiously enter the abode of another in order to install the recording equipment. *See, e. g., United States v. Ford,* 553 F.2d 146 (D.C. Cir. 1977); Judicial Acceptance of Video Tape as Evidence, 16 Am.Crim.L.Rev. 183, 192–93 (1978). This is simply a case where the defendant entered a room controlled by the police and sold heroin to a police agent in that room.[2] The defendant's expectation of privacy was that Parks would not tell the police of the transaction; just as that expectation is not constitutionally protectable, so there is no constitutional prohibition against admission of the tape where Parks consented to the filming.

Defendant also argues that his Fifth Amendment rights against self-incrimination were violated. Defendant cites no authority to support his position; instead he simply argues that allowing the jury to watch and listen to the defendant on film for approximately one hour where defendant had not freely consented to the filming violated his Fifth Amendment rights.

In *United States v. Craig,* 573 F.2d 455 (7th Cir. 1977), cert. denied 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978), the court held admissible a recording made of a phone conversation where one party had consented to the recording. With regard to defendant's argument that his Fifth Amendment rights had been violated, the court held as follows:

"Further, Walker's contention that his Fifth Amendment rights were violated since he should have been made aware of his rights prior to making any statement is of no avail. Advice of rights is required in custodial situations where the inherent pressures to speak in the face of governmental authority are present. *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1; *United States v. Gardner,* 516 F.2d 334 (7th Cir. 1975), *cert. denied,* 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975). As Judge Bauer stated in *United States v. Bastone, supra,* 526 F.2d at 977:

'A person is not entitled to warnings simply because an investigation has focused upon him. The test is not focus alone, but rather, focus plus custodial interrogation. *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).'

"While it is clear the investigation had focused upon defendant Walker, his recorded conversations with Carpentier involved no confrontation with governmental authority in the context of a custodial interrogation calling for *Miranda* warnings. Consequently, we must reject Walker's contention that the recordings violated his Fifth Amendment rights." 573 F.2d at 474.

---

2. Defendant argues that his expectation of privacy is greater here because he was living in the room no. 8 and paying rent to Mickey Parks. However, his testimony was very indefinite as to whether or when he was living in room no. 8, while Parks testified that defendant was not living there at the times that the recordings were made, and Lt. Galland testified that to his knowledge defendant was not living there at the time the tapes were made, but was living in another room in the motel. Since the police originally rented the room and apparently had control over it, this argument fails to persuade us that the trial court erred in denying the motion to suppress.

In *People v. Fenelon*, 14 Ill.App.3d 622, 303 N.E.2d 38 (1973), the court held that the waiver of *Miranda* rights is not a prerequisite to the admission of a video recording of physical tests to determine intoxication. The court reasoned that where the evidence of the tests themselves is admissible, then the recording of those tests is admissible.

The United States Supreme Court in *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), although not concerned with electronic surveillance, held that "a necessary element of compulsory self-incrimination is some kind of compulsion." *Id.* at 304, 87 S.Ct. at 414. As noted in that case, "[i]n the present case no claim has been or could be made that the petitioner's incriminating statements were the product of any sort of coercion, legal or factual." *Id.* Defendant here acted voluntarily, and the recordings of his acts, just like the eyewitness testimony to his acts, are admissible.

*Affirmed.*

DONALDSON, C. J., and SHEPARD, BAKES and McFADDEN, JJ., concur.