868 P.2d 1231

STATE of Idaho, Plaintiff–Respondent,

v.

Randall Floyd WILKINS,
Defendant–Appellant.

No. 20158.

Supreme Court of Idaho,
Boise, November 1993 Term.

Feb. 8, 1994.

**216**

Margolin, Arguimbau & Battson, San Francisco, CA, and Manweiler, Bevis & Cameron, P.A., Boise, for defendant-appellant. Ephraim Margolin argued.

Larry EchoHawk, Atty. Gen., and Michael A. Henderson, Deputy Atty. Gen., argued, Boise, for plaintiff-respondent.

JOHNSON, Justice.

This is a criminal sentencing case. We conclude that the trial court improperly re-

quired the defendant, who had pleaded guilty, to testify for the prosecution at sentencing concerning matters beyond the facts of the case and concerning matters beyond what was necessary at the plea hearing to establish that the defendant pleaded guilty freely and voluntarily. We also conclude that the trial court improperly required the defendant's personal psychiatrist to testify at the sentencing hearing, invading privileged communications with the defendant. Therefore, we vacate the sentence and remand for resentencing.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

As the result of an incident between Randall Floyd Wilkins (Wilkins) and his former girlfriend, Susan Gockel (Gockel), Wilkins was charged with misdemeanor battery, and Gockel sought and obtained a protection order preventing Wilkins from having contact with her. Despite the order, Wilkins continued to contact Gockel. Eventually, the police arrested Wilkins for violation of the protection order.

While in jail, Wilkins began thinking of killing Gockel and then himself. Following his release from jail on bail, Wilkins proceeded to Gockel's apartment carrying a handgun. After gaining entry to Gockel's apartment by deception, Wilkins put the gun to Gockel's neck and told her that he was going to kill her and then himself. Gockel eventually calmed Wilkins down and persuaded him to let her go to work. From work, she telephoned the police, who arrested Wilkins.

After his arrest, Wilkins was transported to the Ketchum Police Station, where the police read Wilkins his *Miranda* rights and interrogated him. When Wilkins's parents arrived in the booking room, the officer who was interrogating Wilkins offered to leave Wilkins alone with his parents. Wilkins said he would like to be alone with his parents, if the officer would turn off the tape recorder the officer had been using during the interro-

gation. After the officer turned off the tape recorder and left the booking room, Wilkins spoke to his parents. The emergency dispatcher for the city heard and recorded the conversation over an intercom system.

The prosecutor charged Wilkins with assault with intent to commit a serious felony. Wilkins pleaded not guilty and requested a mental examination to determine his fitness to proceed. After a psychiatrist determined Wilkins was competent to proceed, Wilkins pleaded guilty pursuant to a plea agreement. As part of the plea agreement, prior to sentencing, Wilkins was to undergo a psychological evaluation and to be transported to a California mental health care facility, where he would be evaluated and treated for a period of sixty days prior to sentencing. The plea agreement also provided that the misdemeanor charges for battery and for violation of the protective order would be continued until after the sentencing, and then dismissed.

At the time of Wilkins's guilty plea, the trial court informed Wilkins:

> You give up your constitutional privilege against self-incrimination. You can be required to take the witness stand under oath as to the facts of this case, and the Court can decide whether your plea is freely and voluntarily given and can accept that plea.

Prior to the sentencing hearing, Wilkins filed a motion in limine seeking to preclude the prosecution from: (1) compelling Wilkins to take the stand and testify against himself; (2) introducing any testimony from Wilkins's private psychiatrist, on the ground that compelling such testimony would violate the psychotherapist and patient privilege; and (3) introducing evidence of the recorded conversation between Wilkins and his parents in the police department booking room. The trial court refused to preclude the prosecution's presentation of this evidence.

At the sentencing hearing, the prosecution called both Wilkins and his private psychiatrist to testify. The prosecution also intro-

duced evidence of the taped conversation between Wilkins and his parents in the police department booking room. At the beginning of the sentencing hearing, the prosecution informed the trial court that the two misdemeanors against Wilkins had been dismissed.

The trial court sentenced Wilkins to a ten-year unified sentence, with the first five years to be served on a determinate basis. Wilkins appealed.

## II.

**BY HIS GUILTY PLEA, WILKINS WAIVED HIS PRIVILEGE AGAINST COMPULSORY SELF-INCRIMINATION ONLY WITH REGARD TO THE FACTS OF THE CASE AND WHETHER HE PLEADED GUILTY FREELY AND VOLUNTARILY.**

Wilkins asserts that his guilty plea did not waive his privilege against self-incrimination at sentencing under both the Fifth Amendment to the United States Constitution and art. 1, § 13 of the Idaho Constitution. We agree, to the extent that Wilkins was required to testify about matters that went beyond the facts of the case and whether he pleaded guilty freely and voluntarily.

In *State v. Carrasco*, 117 Idaho 295, 787 P.2d 281 (1990), the Court stated:

> When a defendant enters a plea of guilty, the defendant waives, among others, the following rights of constitutional dimension: the privilege against compulsory self-incrimination....

*Id.* at 297, 787 P.2d at 283.

This excerpt from *Carrasco* is derived from the United States Supreme Court case of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In *Boykin*, the Supreme Court stated that the Fifth Amendment privilege against compulsory self-incrimination is waived when a guilty plea is entered. 395 U.S. at 243, 89 S.Ct. at 1712, 23 L.Ed.2d at 279. The purpose of this waiver is to permit the trial court to interrogate the defendant to determine the voluntariness of

the plea and to establish a factual basis for accepting it. This is what Wilkins was told by the trial court, when the trial court stated that if Wilkins pleaded guilty, he could "be required to take the witness stand under oath as to the facts of this case, and the Court can decide whether your plea is freely and voluntarily given and can accept that plea."

In *State v. [Bryan] Lankford*, 116 Idaho 279, 775 P.2d 593 (1989), *rev'd on other grounds, Lankford v. Idaho*, 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991), the Court concluded that the defendant's voluntary decision to take the stand during trial waived his privilege against self-incrimination at sentencing as well, but only in a limited fashion:

> Lankford argues that the sentencing was a proceeding entirely separate from his trial and that he can therefore reassert his waived privilege. However, if a defendant has previously waived his privilege against self incrimination by voluntarily testifying at trial, that waiver *continues* into sentencing *with respect to the testimony voluntarily given at trial.*

*Id.* at 282, 775 P.2d at 596 (emphasis added).

In *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the Supreme Court rejected the prosecution's argument that a defendant has a Fifth Amendment privilege against self-incrimination only during the guilt phase of a trial, and not during the penalty phase after the defendant has been found guilty. *Id.* at 462, 101 S.Ct. at 1872, 68 L.Ed.2d at 368. Concerning the Fifth Amendment, the Supreme Court stated:

> The essence of this basic constitutional principle is "the requirement that the State which proposes to convict *and punish* an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips."

*Id.*, (emphasis in original).

The Supreme Court continued:

We can discern no basis to distinguish between the guilt and penalty phases of respondent's capital murder trial so far as the protection of the Fifth Amendment privilege is concerned. Given the gravity of the decision to be made at the penalty phase, the State is not relieved of the obligation to observe fundamental constitutional guarantees. Any effort by the State to compel respondent to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment.

*Id.* at 462–63, 101 S.Ct. at 1873, 68 L.Ed.2d at 369 (citations omitted) (footnotes omitted).

Although *Estelle* involved sentencing following a guilty verdict, and this case involves sentencing following a plea of guilty, the principle stated in *Estelle* is equally applicable, except as to the matters into which the trial court could have inquired at the time of the guilty plea.

At the sentencing hearing, Wilkins was required to testify to matters that went well beyond the facts of the case and information that would have been appropriate to determine whether he pleaded guilty freely and voluntarily. The trial court relied heavily on this testimony in sentencing Wilkins. Therefore, we conclude it is necessary to vacate the sentence and remand for resentencing.

### III.

**THERE IS AN INADEQUATE RECORD TO ADDRESS THE ADMISSION OF EVIDENCE DURING THE SENTENCING HEARING OF STATEMENTS WILKINS MADE AFTER HE ASSERTED HIS RIGHT TO COUNSEL.**

Wilkins asserts that it was a violation of his privilege against self-incrimination for the trial court to allow the prosecution to present at the sentencing hearing statements taken from Wilkins by the police in violation of his *Miranda* rights after he asserted his right to counsel. We decline to address this issue, because there is an inadequate record for review.

Wilkins has not presented us with a record in this appeal which reveals whether Wilkins

was advised of his *Miranda* rights, whether or how Wilkins invoked his right to counsel, what statements were made by Wilkins, whether the statements at issue were made before or after his asserted invocation of his right to counsel, and whether Wilkins initiated further conversations with police officers. Therefore, we do not address the issue. *See Chenoweth v. Sanger*, 123 Idaho 189, 190–91, 846 P.2d 191, 192–93 (1993).

## IV.

## IT WAS A VIOLATION OF WILKINS'S PRIVILEGED COMMUNICATION WITH HIS PSYCHOTHERAPIST FOR THE TRIAL COURT TO COMPEL WILKINS'S PSYCHIATRIST TO TESTIFY ABOUT COMMUNICATIONS WITH WILKINS.

Wilkins asserts that the trial court violated both his privilege against self-incrimination protected under the Fifth Amendment and his privilege to confidential communications with his psychotherapist protected under I.R.E. 503 by compelling Wilkins's personal psychiatrist to testify about communications between the personal psychiatrist and Wilkins. We agree that this was a violation of the privilege under I.R.E. 503. Therefore, we do not reach the constitutional issue presented under the Fifth Amendment.

Before he was arrested and charged with the crime to which he pled guilty in this case, Wilkins had consulted a psychiatrist (Wilkins's personal psychiatrist) for evaluation and treatment with regard to Wilkins's prior misconduct toward Gockel. By his motion in limine, Wilkins sought to preclude, on the grounds of privilege, the prosecution from calling Wilkins's personal psychiatrist as a witness at the sentencing hearing to testify about communications made during Wilkins's therapy sessions. The trial court denied the motion, stating:

> [Wilkins's personal psychiatrist] can be called by the State as a witness at sentencing. Generally, any communication between a psychotherapist and his patient is

privileged. Idaho Rule of Evidence 503. However, there is no privilege "as to a communication relevant to an issue of a physical, mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense." Idaho Rule of Evidence 503(d)(3). In this case, it is clear that the defendant will be relying heavily on his mental condition as mitigation upon sentencing. Since the defendant is relying on his mental condition as a claim in mitigation at sentencing, the Court finds that there is no privilege under Idaho Rule of Evidence 503.

During the sentencing hearing, Wilkins's personal psychiatrist testified that Wilkins "was saying he was having violent thoughts toward [Gockel], but he didn't have any plan," and that Wilkins "might have used the term that he had some thoughts of killing" Gockel. Wilkins's personal psychiatrist evaluated Wilkins's psychological disorders as being more severe than had another psychiatrist who testified for the prosecution at sentencing. In addition, Wilkins's personal psychiatrist revealed that Wilkins had been charged and convicted of possession of a loaded firearm which he used to threaten a former girlfriend seven years earlier. Wilkins's personal psychiatrist further testified that Wilkins had held a gun to Wilkins's own head a week before he first met with the personal psychiatrist. None of this information was revealed by the prosecution's psychiatrist or by other evidence.

I.R.E. 503(b)(2) states:

> A patient has a privilege in a criminal action to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.

Many evidentiary rules do not apply at sentencing. *State v. Johnson,* 101 Idaho 581, 583, 618 P.2d 759, 761 (1980) (strict rules of evidence as applied during the guilt phase of a trial do not apply to the sentencing process). The rules concerning privileges, however, "apply at all stages of all actions, cases and proceedings." I.R.E. 101(c). Therefore, unless there was some basis for the trial court to ignore the privileged nature of the communications between Wilkins and his personal psychiatrist, the trial court should not have compelled the personal psychiatrist to testify.

I.R.E. 503(d)(3) states:

There is no privilege under this rule as to a communication relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which [the patient] relies upon the condition as an element of his claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of [the party's] claim or defense.

The trial court relied on I.R.E. 503(d)(3) in rejecting Wilkins's assertion of the privileged nature of his personal psychiatrist's testimony about statements made to the psychiatrist by Wilkins. It was the prosecution, however, not Wilkins, that made Wilkins's mental state an issue for sentencing. The prosecutor filed a notice of intent to produce aggravating evidence upon sentencing, which stated the prosecution's intent to call various witnesses to testify concerning Wilkins's mental condition.

Wilkins presented psychiatric testimony at the sentencing hearing only after the trial court ruled that the prosecution could compel Wilkins's personal psychiatrist to testify. Wilkins's consultation with his personal psychiatrist, his examination by a court-appointed psychiatrist, and his request to be sent to a psychiatric facility in California pending sentencing, did not inject his mental condition into the sentencing proceedings. None of these committed him to introducing evidence of his mental state at the sentencing

hearing, and he did not rely on any of them in mitigation of his sentence. Therefore, it was improper for the trial court to have compelled Wilkins's personal psychiatrist to testify at the sentencing hearing.

■ We also reject the contention of the state that Wilkins had waived the privilege he had for his communications with his personal psychiatrist. The state argues that this waiver occurred through the direct examination and failure to object to cross-examination of the prosecution's psychiatrist at a hearing to determine whether the trial court would allow Wilkins to go to the California mental health care facility. In this testimony, the prosecution's psychiatrist testified that Wilkins's personal psychiatrist had told the prosecution's psychiatrist that Wilkins's personal psychiatrist had a patient who was very depressed and suicidal and also was obsessed with a young woman. Wilkins's personal psychiatrist was concerned about his obligation to warn intended victims and discussed this with the prosecution's psychiatrist as a professional colleague, not for the purpose of sharing clinical information about Wilkins.

I.R.E. 510 provides:

A person upon whom these rules confer a privilege against disclosure of the confidential matter or communication waives the privilege if the person or the person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of *any significant part* of the matter or communication. This rule does not apply if the disclosure is itself privileged communication.

(Emphasis added.)

The disclosure of the communication by Wilkins's psychiatrist to the prosecution's psychiatrist did not constitute a significant part of the confidential communication between Wilkins and his personal psychiatrist that was the subject of Wilkins's personal psychiatrist's testimony at the sentencing hearing. In his conversations with the prosecution's psychiatrist, Wilkins's personal psy-

chiatrist did not reveal Wilkins's name and only sought professional consultation from the prosecution's psychiatrist concerning the duty to warn intended victims. Wilkins's failure to object to the testimony of the prosecution's psychiatrist at the hearing concerning Wilkins's going to the California mental health care facility did not constitute a waiver of the privilege Wilkins had in his communications with his personal psychiatrist.

■ The state contends that, even if the trial court should not have compelled Wilkins's personal psychiatrist to testify, the error was harmless. The trial court's admission of the privileged testimony was harmless only if it did not affect a substantial right of Wilkins. I.C.R. 52 ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); I.R.E. 103(a) (error cannot be predicated upon a ruling which admits or excludes evidence unless a "substantial right of the party is affected....").

Wilkins's personal psychiatrist's testimony at the sentencing hearing revealed not only Wilkins's violent behavior toward Gockel, but also his threats of violence toward others. The trial court indicated its concern about this proclivity to violence. Therefore, we conclude that the erroneous admission of the testimony of Wilkins's personal psychiatrist at the sentencing hearing did affect the defendant's substantial rights.

## V.

## THE TRIAL COURT DID NOT VIOLATE WILKINS'S CONSTITUTIONAL OR STATUTORY RIGHTS BY CONSIDERING EVIDENCE DURING THE SENTENCING PROCEEDINGS OF A CONVERSATION BETWEEN WILKINS AND HIS PARENTS IN A POLICE DEPARTMENT BOOKING ROOM.

Wilkins asserts that the trial court violated his rights under the Fourth Amendment and under state and federal wiretap statutes by admitting evidence during the sentencing proceedings of the conversation between Wilkins and his parents in the police department booking room. We disagree, because although Wilkins had a subjective expectation of privacy, it was not a reasonable expectation of privacy.

The state acknowledges:

When Wilkins's parents arrived the officer said, 'Do you want to be alone for a couple of minutes?' Wilkins responded, 'Yes, if we could have the recorder turned off.' The officer said, 'You bet. I just have to have it on when I'm here.'

The dispatcher testified that she heard the police officer "say that he was leaving the room, he'd leave them alone for a while."

There were two recording devices—a tape recorder in the booking room and the electronic monitoring system wired to the dispatcher's office. The tape recorder was turned off when the officer left the booking room, while the electronic monitoring system remained on.

During the conversation with his parents, Wilkins made statements that he should have finished what he started, that he should have done it that afternoon, that if he had had the guts, it would all be taken care of, and that he should have gone through with it. These statements apparently referred to Wilkins's intention to kill Gockel.

The trial court gave this explanation of its denial of Wilkins's motion in limine:

The State can use statements made by the defendant to his parents at the Ketchum Police Department shortly after the defendant was arrested. In this case, the Ketchum dispatcher, who recorded the conversation between the defendant and his parents, testified at an earlier hearing in this matter that she listens to conversations in the police booking room for the purpose of police safety. The dispatcher testified that "We have an intercom that goes to several rooms in the police station up to the dispatch center. We use it whenever someone is being booked downstairs. It is obviously a safety feature in

case something happened and they needed help." The need of the Ketchum Police to have a safe and secure police station outweighs any expectation of privacy the defendant could possibly maintain in this particular setting. Because there was no expectation of privacy in the booking room of the Ketchum Police Department, the Court finds that the communication between the defendant and his parents is not subject to suppression under 18 U.S.C. 2510, *et seq.* [the federal wiretap statute] or Idaho Code, § 18–6701, *et seq.* [the Idaho wiretap statute].

■ The interception of a conversation in which one has a reasonable expectation of privacy constitutes a search within the meaning of the Fourth Amendment. *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576, 583 (1967). In *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), the United States Supreme Court stated that each Fourth Amendment inquiry involves determining: (1) whether the defendant had an actual, subjective expectation of privacy; and (2) whether the defendant's expectation of privacy, viewed objectively, was reasonable and justifiable under the circumstances. *Id.* at 740, 99 S.Ct. at 2580, 61 L.Ed.2d at 226–27. In *State v. Jennings*, 101 Idaho 265, 611 P.2d 1050 (1980), the Court noted:

> The Fourth Amendment protects those claiming a "justifiable," a "reasonable," or a "legitimate" expectation of privacy from government-initiated electronic surveillance.
>
> A legitimate expectation of privacy "means more than a subjective expectation of not being discovered."

*Id.* at 266, 611 P.2d at 1051 (citations omitted).

■ In asking that the officer turn off the recorder, Wilkins made an attempt to preserve the privacy of his conversation with his parents. This was sufficient to establish a subjective expectation of privacy. The question is, however: was this expectation, viewed objectively, reasonable and justifiable?

Absent some special circumstance, the overhearing and transcription of a conversation between a person detained and the person's visitors in a jailhouse visiting room does not violate the detained person's Fourth Amendment rights. *Lanza v. State of New York*, 370 U.S. 139, 143–44, 82 S.Ct. 1218, 1221, 8 L.Ed.2d 384, 387–88 (1962). In *United States v. Hearst*, 563 F.2d 1331 (9th Cir. 1977), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978), the Ninth Circuit pointed out that there is no significant difference in the governmental interests of security and order where a pretrial detainee is concerned rather than a prisoner. *Id.* at 1345–46 n. 11.

It would be contrary to the governmental interest in maintaining security and order in facilities where those accused or convicted of crime are detained or incarcerated to allow an individual defendant to curtail electronic surveillance of visiting areas by requesting privacy. Given the necessity of this surveillance, the fact that the police officer in this case turned off the tape recorder and left the booking room at Wilkins's request is not sufficient to establish an objectively reasonable and justifiable expectation of privacy in Wilkins's conversation with his parents.

■ Wilkins also asserts that the interception of his conversation with his parents violated federal wiretap laws, 18 U.S.C. §§ 2510–2521, and Idaho wiretap laws, I.C. §§ 18–6701—18–6709. 18 U.S.C. § 2510(2) defines an "oral communication" within the meaning of the federal wiretap law as one "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." I.C. § 18–6701(2) defines an "oral communication" as one "uttered by a person under circumstances justifying an expectation that said communication is not subject to interception." These provisions suggest the same standard for determining the protection of the wiretap laws as is employed in Fourth Amendment cases.

Therefore, as we did in the case of the Fourth Amendment claim, we conclude that Wilkins was not entitled to the protection of the federal and state wiretap laws.

## VI.

**THE CASE SHOULD BE REMANDED TO THE TRIAL COURT FOR RESENTENCING, WITHOUT REQUIRING A NEW DISTRICT JUDGE TO PERFORM THE RESENTENCING.**

█ Wilkins asserts that, if his sentence is vacated, the case should be remanded to a different trial judge for resentencing. We disagree.

Wilkins argues that, because the trial court heard Wilkins's improperly compelled testimony and the improperly compelled testimony of Wilkins's psychiatrist, both justice and the appearance of justice demand that the case be remanded for resentencing before a different trial judge.

In requesting remand to a different judge for sentencing, Wilkins points to the trial court's reluctance to recognize Wilkins's privilege without weighing the assertion of the privilege against Wilkins. The trial court stated:

> I have some concern, aside from other rulings, you're going to be asking for the leniency of the court. At a sentencing hearing it's always been my understanding that the court has to have all the information about the defendant in order to do a job of sentencing that fits this defendant as well as the particular crime. If the court were to rule that you had the right to cover up some of this stuff, it seems to me the inferences that can be drawn by the court from that particular act defeat your objective of asking for leniency. I'm having a little trouble of thinking how the defendant can come here and show remorse and make a full disclosure and ask for leniency of the court unless this matter

comes before the court to consider in connection with the sentencing.

Finally, Wilkins argues that, because there was no trial to sit through, reassignment to a different sentencing judge will not be burdensome to the new sentencing judge and will not entail a waste of judicial resources.

We acknowledge that these circumstances cause us concern about the appearance of impartiality and fairness on resentencing before the same trial judge on remand. Nevertheless, the procedures of I.C.R. 25 are available to Wilkins on remand to seek disqualification of the trial judge who sentenced him previously. Whether the trial judge can be fair and impartial in resentencing Wilkins is left to the sound discretion of the trial judge. *Cf. State v. Pizzuto*, 119 Idaho 742, 776, 810 P.2d 680, 714 (1991), *overruled on other grounds, State v. Card*, 121 Idaho 425, 432, 825 P.2d 1081, 1088 (1991). We will not presume now that the trial judge will abuse the exercise of this discretion if Wilkins pursues a motion to disqualify on remand.

## VII.

**CONCLUSION.**

We vacate the sentence and remand to the trial court for resentencing.

McDEVITT, C.J., and BISTLINE, TROUT and SILAK, JJ., concur.