85 P.3d 1135

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Russell Alan SPENCER, Defendant–Appellant.**

No. 28742.

Court of Appeals of Idaho.

Feb. 23, 2004.

Molly J. Huskey, State Appellate Public Defender; Justin Michael Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent.

PERRY, Judge.

Russell Alan Spencer appeals from his judgments of conviction entered after a jury found him guilty of possession of methamphetamine and possession of drug paraphernalia. Spencer contends that the district court erred in denying his motion to suppress the evidence found during a warrantless search, arguing that he had a reasonable expectation of privacy in the bedroom where he was living. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2001, the time of the incident in question, Spencer was living in a bedroom in the home of his sister, Nina Conklin, who was on felony probation. Also living with Conklin was her mother, Frances Spencer, who was also on felony probation. As a condition of their probations, Conklin's residence was subject to search at the request of their probation officer.[1] Spencer, a convicted felon, had been released from his probation just a few days prior to the incident at issue. Spencer's probation contained the same probationary search clause.

Prior to this, in October 2000, Spencer was staying in the basement of Conklin's previous residence. During this time, Conklin's probation officer arrived to do a probationary search of the residence. Conklin's probation officer, knowing that Spencer was a convicted felon, informed him that he was to leave the residence and that he was not permitted to reside with Conklin. Spencer was also told by the probation officer that the entire house was subject to search pursuant to the conditions of Conklin's and Frances's probations. A search of the house, including the basement where Spencer was staying, was conducted.

In March 2001, Conklin informed her probation officer that she had moved and told her probation officer that the only people living with her were her husband, her four children, and her mother. Later that month, Conklin's probation officer, along with two police officers, went to Conklin's house to perform a probationary search. While in the house, the officers came upon a door that was locked. Conklin told the officers that Spencer was residing with her and that the room with the locked door was his bedroom. One of the officers knocked on the bedroom door. Spencer came out of the bedroom and reiterated what Conklin had told the officers—that he was staying in the bedroom. The officers then informed Spencer that all areas of the residence were subject to search pursuant to Conklin's probation and that, as a result, his room would be searched also. In the ensuing search of Spencer's room, the officers found and seized baggies with methamphet-

---

1. Conklin and Frances were under the supervision of the same probation officer.

amine residue and other items of drug paraphernalia.

Spencer was charged with possession of methamphetamine, I.C. § 37–2732(c), and possession of drug paraphernalia, I.C. § 37–2734A. Prior to trial, Spencer filed a motion to suppress the evidence seized during the warrantless search of his room. Following a hearing, the district court denied the motion, ruling that Spencer did not have a reasonable expectation of privacy in the room. Spencer was thereafter found guilty by a jury of both charges. Spencer appeals, challenging the district court's denial of his suppression motion.

## II.

### ANALYSIS

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. Application of these constitutional safeguards depends on whether the person invoking protection had a justifiable, reasonable, or legitimate expectation of privacy which was invaded by some governmental action. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226 (1979). As such, a Fourth Amendment analysis involves a determination of whether the defendant had an actual, subjective expectation of privacy and, if so, whether the defendant's expectation of privacy, when viewed objectively, was reasonable under the circumstances. *Id.; State v. Wilkins*, 125 Idaho 215, 222, 868 P.2d 1231, 1238 (1994).

In the instant case, the district court held that Spencer did not have an objectively reasonable expectation of privacy in his bedroom in Conklin's house. In denying Spencer's motion to suppress, the district court stated:

> The facts presented demonstrate that Spencer's expectation of privacy in Conklin's home was not reasonable. Conklin had consented to a search of her home. Conklin had also agreed that as a condition of probation that she would not associate with other known felons. She agreed that no one other than her husband and children would reside with her and she was specifically instructed that Spencer was not to live with her. Spencer was advised that Conklin had been forbidden to reside with him. Spencer as a recent probationer had knowledge that a condition of Conklin's probation was that her home could be searched.

On appeal, Spencer argues that the district court erred in this conclusion. Spencer contends that his expectation of privacy in the bedroom in which he was residing was objectively reasonable because of the steps he had taken to ensure his own privacy and to ensure that the probationer living in the home, Conklin, did not have access to his bedroom. In response, the state contends that Spencer's expectation of privacy could not have been reasonable given his knowledge that the house was subject to probationary search and that he was not allowed to be living with Conklin or Frances.

We assume that Spencer had a subjective expectation of privacy, so we must next determine whether this expectation was objectively reasonable—meaning that it was legitimate, justifiable and one society should both recognize and protect—given that Spencer was aware that Conklin's residence was subject to probationary searches. An objectively reasonable expectation of privacy is one that society deems reasonable or legitimate. *State v. Johnson*, 126 Idaho 859, 862, 893 P.2d 806, 809 (Ct.App.1995). Such ex-

pectation of privacy must be more than a subjective expectation of not being discovered. *Rakas v. Illinois*, 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387, 401 n.12 (1978); *State v. Jennings*, 101 Idaho 265, 266, 611 P.2d 1050, 1051 (1980). The burden is on the defendant to prove the existence of a legitimate expectation of privacy. *State v. Dreier*, 139 Idaho 246, 251, 76 P.3d 990, 995 (Ct.App.2003). Accordingly, if a defendant proves that he or she had an expectation of privacy that was reasonable, justifiable, or legitimate, then that objectively reasonable expectation will be recognized by, and therefore protected by, the Fourth Amendment.

On the facts of this case, we hold that Spencer did not have an objectively reasonable expectation of privacy in the room he occupied in Conklin's home. The facts show that Conklin had signed a consent to search her entire house upon being placed on probation. Spencer had previously been residing with Conklin when he was told that he was not allowed to live there and that a consent to search had been executed by Conklin. At that previous encounter, the entire residence had been searched including the basement that Spencer occupied. Spencer moved back in with Conklin, being fully aware that the house was subject to a search at any time and that he was not permitted to live there. Despite this advance knowledge, Spencer moved into Conklin's new residence and now attempts to argue that his expectation of privacy therein was reasonable and legitimate. Under the facts of this case, we conclude that Spencer cannot *nullify* Conklin's consent due to his knowledge of the terms of Conklin's probation which he acquired *before* moving in with Conklin. Accordingly, we hold that Spencer's expectation of privacy was neither legitimate nor reasonable and, therefore, will not be recognized or protected by the Fourth Amendment.

2. This situation is also distinguishable from the one presented in *State v. Devore*, 134 Idaho 344, 2 P.3d 153 (Ct.App.2000). In *Devore*, Blaskey, a probationer who, as a condition of probation, was subject to search, was living with Devore. Officers went to Devore's house in search of Blaskey and subsequently performed a search of the house. During the search, an officer discov-

We emphasize, however, that this holding is limited to the factual situation presented in this case—the advance knowledge that Spencer had of Conklin's probationary terms and consent to search prior to moving into Conklin's home. This factual scenario is distinguishable from other cases by a co-tenant where consent remains a requirement. If the evidence established that Spencer had no knowledge that Conklin was subject to probationary search, then his expectation of privacy may have been objectively reasonable and his consent would be necessary to search his private bedroom. Likewise, had Spencer been living with Conklin *prior* to her being placed on probation, then his already established objective expectation of privacy would not have been defeated simply because Conklin, a cohabitant, was placed on probation. This latter scenario would still require that consent be obtained in order to make the search valid.[2] However, neither of these factual scenarios is applicable here. Accordingly, we conclude the district court did not err in determining that Spencer did not have an objectively reasonable expectation of privacy and, therefore, the bedroom was subject to the warrantless probationary search.

### III.

### CONCLUSION

Spencer did not have an objectively reasonable expectation of privacy in his bedroom in Conklin's residence and, the warrantless search of Spencer's room was constitutionally valid. The district court did not err denying Spencer's motion to suppress the evidence found in the warrantless search of his room. Accordingly, Spencer's judgments of conviction are affirmed.

Judge GUTIERREZ, concurs.

ered methamphetamine in a safe located in the master bedroom. The search was upheld on appeal because Devore had signed a consent to search form one year earlier when Blaskey had moved in with her. In the instant case, Conklin's probation officer did not learn that Spencer was again living with Conklin in her new home until they arrived to search the residence.

Judge Pro Tem SCHWARTZMAN, Specially Concurring.

I write separately to emphasize the restrictive nature of the court's holding herein, limited to the particular fact-driven scenario of this case. Here Spencer, a convicted felon previously subject to the same probationary search provision, voluntarily moved into the home of his sister knowing the residence was subject to search, knowing that he was not permitted to reside with her, failing to advise the probation department and seek special permission before moving in, and residing there at the sufferance of his sister.[1] Any other result would permit the probationer and/or drug user to find *sanctuary* in a residence subject to probation search through the simple expedient of placing a lock on some door and running for cover once the knock of an inquisitive probation officer is first heard.

By moving into the house under this set of circumstances, Spencer has, in effect, given his *de facto* consent to be subject to the same probationary home search conditions that apply to his sister. Thus, this case is an exception to the general rule that when a probationer is sharing living quarters with another who is not subject to similar conditions, the probation officer may only search those parts of the premises that the probationer has common authority to use. *See Milton v.*

State, 879 P.2d 1031 (Alaska App.1994), and cases cited therein; *see also State v. Barker,* 136 Idaho 728, 40 P.3d 86 (2002); *State v. Dreier,* 139 Idaho 246, 76 P.3d 990 (Ct.App. 2003).

Accordingly, a person who lives with a probationer generally retains a limited expectation of privacy in his person, possessions and place of residence. In the case of a shared residence, the probation search may extend to all areas of the residence over which the probationer has control, even if that control is not exclusive, and includes all common areas of the residence. However, the co-resident still retains the right to object to a search that exceeds the scope of these dimensions and seek suppression of evidence found as a result thereof. *Milton,* 879 P.2d at 1035–36. Nothing herein, on the other hand, would preclude the probation department from attempting to obtain a separate consent to search from the co-tenant, or alternatively requiring the probationer to live separate and apart from the co-tenant as a condition of probation.

1. It does not appear that Spencer even enjoyed the relationship of tenant/landlord with Conklin.

*See and compare State v. Benson,* 133 Idaho 152, 983 P.2d 225 (Ct.App.1999).