IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

AUGUST 1998 SESSION

FILED

April 1, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 01C01-9801-CC-00007 |
| | ) | |
| | ) | Rutherford County |
| v. | ) | |
| | ) | Honorable James K. Clayton, Jr., Judge |
| | ) | |
| RUDOLPH MUNN, | ) | (First Degree Murder) |
| | ) | |
| Appellant. | ) | |

CONCURRING AND DISSENTING OPINION

I concur in affirming the conviction and most of the reasoning reached in the majority opinion. I respectfully disagree, though, with my colleagues' conclusion that the surreptitious taping of the conversations between the defendant and his parents did not violate the Fourth Amendment to the United States Constitution and the federal and state wiretapping statutes. Because I cannot conclude that the admission of the tainted statements was harmless beyond a reasonable doubt relative to sentencing, I would reverse the sentence of life without parole and remand the case for a new sentencing hearing.

The majority opinion concedes that the defendant had a subjective expectation of privacy but concludes that it is not an expectation that society should recognize as reasonable or justified. I believe that the defendant's expectation of privacy is one that should be recognized as reasonable and justified in light of the fact that (1) there was no showing that the conversations were recorded for safety or security, and (2) the officers, with full knowledge that the conversations were being videotaped, led the defendant to believe that the conversations were private.

The facts of this case are somewhat unusual. Officers Peel and Guthrie requested that the defendant come to the police station for questioning, which the defendant voluntarily did, accompanied by his parents. He was initially interviewed by the officers in the Felony Booking Room with his father present. The room was equipped with a visible audiotape recorder on the table that was used periodically throughout the interrogation. However, unbeknownst to the defendant or his parents, the room also contained hidden videotape equipment and microphones which recorded all of the defendant's conversations in the room.

During the first interview, which lasted fifty-four minutes, the defendant denied any involvement in the murder. The officers then told the defendant he was free to go and accompanied the defendant and his father to the lobby. However, the defendant's mother was concerned, and she asked one of the officers if he thought the defendant murdered the victim. The officer told the mother to ask the defendant. The mother continued to express concern that the defendant was not telling everything he knew. The officers then asked the defendant if he would talk to them without his parents, and the defendant agreed.

During the second interview, the defendant continued to deny any knowledge about the crime despite the fact that the officers confronted him with inconsistencies in his story. At one point, the defendant asked the officers to turn off the audiotape that was recording on the table. They complied, and he asked the officers if he could come back on Monday and speak with them when his parents were not there. Officer Guthrie told the defendant, "Your momma's gonna want to talk to me when I get through here . . . ." A few minutes later, Officer Peel said, "I'm gonna tell you your momma's gonna ask me if I think you did it. And I'm gonna say momma yes I do. And you know what she's gonna do. She's gonna have a fit."

2

The defendant's mother then entered the room and asked the officers why they thought the defendant committed the crime. She then pleaded with the defendant to tell the police what he knew, and she told him that God would forgive him and that his family would support him. The defendant continued to tell his mother that he had already told the officers everything he knew. Officer Guthrie then asked the defendant if he wanted to speak to his mother by himself, and the defendant said that he did. The audiotape recorder was off, and the officers left the room. Officer Guthrie went to the videotape room and watched and listened to the defendant's conversation with his mother, during which the defendant eventually said that he killed the victim.

Following the defendant's admission to his mother, the officers returned to the room, and the defendant asked his mother, "Why don't you go ahead and tell them?" The defendant's mother said, "He says he shot [inaudible]," and the defendant said, ".22 caliber, is that what you found?" The defendant then said, "Don't turn on the tape, I would rather not tape it." Following this conversation, a series of conversations took place in the room between the defendant, his parents, and the officers. Some occurred with the defendant and the officers present, some occurred with the defendant and one or both parents present, and some occurred with everyone present.

The defendant challenges as inadmissible those conversations that were recorded when only the defendant and one or more parents were present. He argues that the recording and subsequent admission into evidence of the conversations violated his Fourth Amendment right to privacy and the federal and state wiretapping statutes. As the majority opinion notes, the merits of the defendant's argument rest on a determination of whether the defendant had a reasonable expectation of privacy. See Katz v. United States, 389 U.S. 347, 360, 88 S. Ct. 507, 516 (1967); State v. Roode, 643 S.W.2d 651, 652-53 (Tenn. 1982). This requires an analysis of whether the defendant manifested a subjective expectation of privacy that, when viewed

objectively, is reasonable and justified. Id.; see also State v. Bowling, 867 S.W.2d 338, 341 (Tenn. Crim. App. 1993).

While conceding that the defendant manifested a subjective expectation of privacy, the majority opinion refers to several cases to support its position that the defendant's expectation of privacy is not objectively reasonable. I believe that most of the cases are distinguishable in that the prosecution showed in them that it was necessary to record the conversations for police safety relative to prisoners. For example, in State v. Wilkins, 868 P.2d 1231 (Idaho 1994), the conversation of an arrestee-defendant was recorded by the emergency dispatcher who testified that conversations were recorded for police safety. Id. at 1237. Likewise, in State v. Hauss, 688 P.2d 1051, 1055 (Ariz. Ct. App. 1984), the state proved that the arrestee-defendant's conversation was recorded because the officers were concerned about the defendant receiving a weapon or discussing possible escape plans. Also, in United States v. Hearst, 563 F.2d 1331 (9th Cir. 1977), justification for recording stemmed from the government's interests in prison security and order.

A substantive distinction between those cases and the instant case is that there has been no showing by the state in the present case that the recordings were made in the furtherance of police safety. To the contrary, Officer Guthrie testified at trial that the reason for videotaping conversations is to insure that the officers do not miss anything. In the context of interviewing an individual who has not been arrested, the explanation makes sense, but it has nothing to do with safety or security.

The facts reflect that the conversations between the defendant and his parents were recorded in the hopes of securing evidence. With respect to the defendant's first conversation with his mother, the officers deliberately fostered an expectation of privacy, knowing that the conversation would be far from private. The

4

officers' comments to the defendant during their interrogation of him indicated that they believed the defendant's mother held considerable influence over the defendant. The mother's own questions of the officers indicated that she believed the defendant was not being forthcoming. When the officers could not get the defendant to admit to the crime through their questioning, they encouraged the defendant to speak with his mother alone, anticipating that the defendant would admit the crime to her. Detective Guthrie even testified that after he left the defendant and his mother alone, he went to the videotape room and watched the conversation.

Police safety and security are important and legitimate concerns, and in the appropriate case, the need for police safety and security can outweigh a defendant's right to privacy. This, however, is not that case. The defendant was not in custody. The police deliberately fostered an expectation of privacy for the purpose of getting the defendant to confess to his mother what he would not confess to them. The majority opinion concedes that it does not condone this type of surreptitious behavior. Not only do I not condone it, but I also believe that it violated the defendant's Fourth Amendment rights and the wire tapping statutes.

For the same reasons, I believe that the three other recorded conversations that the defendant challenges are also inadmissible. The second conversation involved the defendant and his father alone in the room, and the defendant said that he killed the victim for money. The defendant's mother then entered, and in that conversation, the defendant further elaborated on the shooting and told his parents that it was intentional. In the final conversation that the defendant challenges, his mother and father were present in the room, and he again said that he shot the victim.

5

The same inquiry applies to these three remaining conversations as applied to the first. That is, did the defendant have a subjective expectation of privacy that was objectively reasonable? Although the officers did not reassure the defendant each time they left the room that the defendant's conversations would be private, the defendant was proceeding under the same expectation of privacy that he had with regard to the first conversation. The officers did nothing to make the defendant believe that his subsequent conversations alone with his parents were any less private that the first one he had with his mother. Again, because the officers deliberately misled the defendant with respect to the first conversation, that same taint of deceit clouds the subsequent conversations. Furthermore, there was no showing by the state that the other conversations were taped for security reasons. Under these circumstances, I would hold all of the defendant's conversations alone with his parents inadmissible.

The remaining issue is whether the admissibility of the private conversations into evidence was harmless beyond a reasonable doubt. The record reflects that after the conversations with his parents, the defendant provided details about the shooting in the presence of the officers. In one conversation, the defendant admitted to shooting the victim in the presence of Officer Guthrie. In another conversation, the defendant told Officers Guthrie and Peel, "I wasn't in over my head, it was all about the gun and money, it's always been about money." Finally, in the last conversation in the presence of both officers, the defendant stated that he took responsibility for himself and stated that he was not sorry for his actions because the defendant "was a dirty little son of a bitch" and was a jerk. I do not believe that the admission of the defendant's statements in issue had any effect on the outcome of the guilt phase of the trial. However, I cannot say the same regarding the sentencing phase.

6

The defendant's discussions with his parents were quite blunt regarding his feelings and motivations about the killing and were much more detailed about the events surrounding the murder than he provided to the police. The state relied on these statements in the sentencing phase. In the context of the jury determining whether the defendant should or should not have the possibility of parole, I believe that the statements could seriously affect the jurors' view of the defendant, particularly as to determining the relative weight of aggravating and mitigating circumstances. I would remand the case for a new sentencing hearing.

_____
Joseph M. Tipton, Judge